49 Cal.Rptr.3d 405 (2006)
143 Cal.App.4th 606
Kathlynn FEDERICI, Plaintiff and Appellant,
v.
GURSEY SCHNEIDER & CO., LLP et al., Defendants and Respondents.
No. B183945.
Court of Appeal of California, Second District, Division Five.
September 28, 2006.
*407 Law Offices of Nicholas A. Carlin and Nicholas A. Carlin, San Francisco, for Plaintiff and Appellant.
Chapman, Glucksman & Dean, Randall J. Dean, Los Angeles, and Michael Louis Newman for Defendants and Respondents.
*406 KRIEGLER J.
Plaintiff Kathlynn Federici appeals from the judgment and order granting the demurrer of the accountancy firm of Gursey, Schneider & Co. and its employee David Blumenthal (collectively, Gursey).[1] Plaintiff alleged that Gursey committed professional negligence in providing her with forensic accounting services in connection with marital dissolution proceedings with her husband Danny Federici, a longtime keyboardist for Bruce Springsteen and the E Street Band. The trial court found plaintiff's professional negligence action was barred by her failure to assert that claim in a prior arbitration that Gursey had successfully brought against her to recover unpaid fees. We affirm. As explained below, an unambiguous provision in Gursey's retainer agreement required, as a prerequisite to any future malpractice action, that plaintiff raise existing professional negligence claims as an affirmative defense in any fee-related arbitration with Gursey. Under the retainer agreement, the issue of professional negligence was to be litigated initially through arbitration, so that any such damages would be offset against Gursey's feesand only if that remedy failed to compensate plaintiff for all of her negligence damages could she pursue further relief through a separate litigation. Because that arbitration provision was valid and enforceable, plaintiff's failure to comply with it resulted in the forfeiture of her right to sue Gursey for malpractice.

*408 FACTS AND PROCEDURAL BACKGROUND[2]
The Federicis married in 1987. At the time of marriage, Danny Federici already had a financially rewarding career as a rock musician. During their marriage and after, his annual earnings from live performances, as well as from record and merchandizing royalties, were "well into the mid six figures." The couple separated in July 2000. In December 2002, plaintiff retained Silberberg to represent her in the dissolution action. Silberberg recommended that plaintiff retain Gursey to assist with forensic accounting in the dissolution proceedingsmore specifically, Gursey was to assess the respective financial positions of plaintiff and her husband with regard to the identification and valuation of their separate and community property.
A four-page, single-spaced letter from Blumenthal to plaintiff, dated December 28, 2000, sets forth the terms of the retainer agreement between plaintiff and Gursey, including the arbitration provision at the heart of this appeal. The retainer agreement's first two paragraphs describe the scope of Gursey's retention. The next five paragraphs describe Gursey's billing practicesthe manner in which it will apply plaintiff's $5,000 retainer fee, how plaintiff will be billed for services, the interest penalty to be applied to overdue account balances, and a 30-day deadline for contesting the fees or charges on periodic billing statements.
The following three paragraphs addressed arbitration. Paragraph eight provided: "Any controversy, claim, or dispute relating to our unpaid fees for professional services and costs rendered under this Agreement shall be submitted for binding arbitration to the American Arbitration Association [AAA] .... Should you contend that any services were performed improperly or below the standard of care you must raise that defense in the arbitration proceeding as an offset to, or reduction, discharge or complete elimination of the fees we contend you owe. In the event the arbitrator eliminates all of our fees and you still believe you have a cause of action not yet satisfied you may bring such action in a Court of Law for affirmative relief. However, if the arbitrator determines that your claim does not exceed our contended fees you then will be prevented from bringing the same contention in any separate civil action."
Paragraph nine further addressed the interplay between fee-related arbitration and a separate action by plaintiff for affirmative relief: "[I]n order to protect your rights and our rights to a trial on any such action in Court for affirmative relief, we agree that neither the findings of the arbitrator(s) [n]or any Judgment entered confirming such arbitration award shall be determinative of any issue in your action in Court for affirmative relief, nor shall they be admissible for the purpose of said trial. You may not assert such a claim as a defense in the arbitration proceeding and then again as a separate civil action for affirmative relief, if the arbitrator determined that your recovery was limited to your fee balance. Should you raise such a claim in the arbitration proceeding, and also file a separate civil action in Court, raising the same claim of improper services performed below the standard of care, we shall, in that instance only, be permitted to show the Court that this claim was made in the arbitration proceeding and therefore is a bar to prevent you *409 from proceeding with the civil action." Paragraph ten discussed entry and collection of an arbitrator's award.
The agreement's final page began: "If, after discussing this agreement with your attorney, you agree that the above accurately sets forth the terms of our engagement, please so indicate by signing below and returning this agreement to Gursey...." Plaintiff signed the agreement on January 12, 2001. Ten days later, Silberberg signed and dated the agreement, representing that he had "reviewed the above agreement with" plaintiff, and that he was "in agreement with its terms."
In the following spring, Silberberg negotiated a marital settlement agreement that plaintiff now considers highly unfavorable to her. In the underlying pleading, plaintiff alleged that Silberberg misrepresented the settlement's unfavorable terms, insisted that she agree to it, and instructed her to sign without reading itwhich she did.[3] On June 18, 2002, the final judgment of dissolution was entered pursuant to the terms of the settlement agreement. That settlement, plaintiff contends, allowed her husband to keep as his own, outside the marital community, approximately "$1.6 million in cash and the rights to virtually all of his Bruce Springsteen band royalties," while she received only $2,500 per month in child support for their two children and a house "with equity valued at under $200,000."
In approximately June of 2003, Gursey sought to arbitrate its claim for unpaid fees against plaintiff. On July 15, 2003, the AAA sent notices to plaintiff and Gursey, confirming the arbitrator's award of $29,884.40, plus interest and fees. On October 16, 2003, the superior court entered judgment for Gursey in its unopposed petition to confirm the arbitrator's award.
On May 10, 2004, plaintiff, representing herself, filed a professional negligence complaint against Silberberg and Gursey. At a November 10, 2004 hearing, the trial court sustained Gursey's demurrer, ruling that plaintiff's claim against Gursey was barred by the doctrines of waiver and res judicata because plaintiff had failed to raise her malpractice allegations during the fee arbitration. The court granted plaintiff leave to amend, providing her with more time to retain counsel and "an opportunity to plead around those defenses."
On February 10, 2005, still in propria persona, plaintiff filed the pleading here at issue, her first amended complaint. According to plaintiff, due to Silberberg's malpractice and breach of fiduciary duty (the first two causes of action) and Gursey's professional negligence (the third cause of action), she failed to receive any portion of various significant assets that should have been included in the marital communityher husband's royalties from Bruce Springsteen's most popular albums and her husband's cash, including a "tour bonus" payment of approximately $620,000 that her husband was to receive shortly after the dissolution. Plaintiff also alleged that her retainer agreement with Gursey did not require that all of plaintiff's professional negligence claims be submitted to arbitration. Plaintiff conceded that she did not counterclaim for professional negligence at the arbitration with Gursey, but alleged that she "was not aware of the facts constituting Gursey's negligence until October 2003, after the fee arbitration had *410 concluded." Plaintiff discovered those facts when she retained an independent accountant to review the financial records used in connection with the dissolution action. Plaintiff further alleged that if the retainer agreement's arbitration provision were interpreted to foreclose her malpractice claim without a "full and fair hearing," it would be unenforceable as being unconscionable and contrary to public policy. Plaintiff alleged that she suffered at least $1 million in general and compensatory damages from Gursey's negligence, but did not specify her fees to Gursey as a component of those damages.[4]
On March 2, 2005, current appellate counsel became plaintiff's counsel in the trial court. Six days later, Gursey demurred to the new pleading, arguing that the arbitration award barred her malpractice claim. The demurrer was supported by the July 14, 2003 arbitrator's award, the judgment on petition to confirm that award (entered by the same court before which the demurrer was pending), and the December 28, 2000 retainer agreement with Gursey. The trial court granted Gursey's unopposed motion to take judicial notice of those documents.
At the April 15, 2005 hearing, the trial court ruled that plaintiff's claim against Gursey was "barred by res judicata and waiver" and sustained Gursey's demurrer without leave to amend.[5] Plaintiff timely appealed.

DISCUSSION
"`In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff.' (Blank v. Kirwan (1985) 39 Cal.3d 311, 318, 216 Cal.Rptr. 718, 703 P.2d 58.) `To meet [the] burden of showing abuse of discretion, the plaintiff must show how the complaint can be amended to state a cause of action. [Citation.] However, such a showing need not be made in the trial court so long as it is made to the reviewing court.' [Citation.] `[W]e may affirm a trial court judgment on any basis presented by the record whether or not relied upon by the trial court.' [Citation.]" (Blumhorst v. Jewish Family Services of Los Angeles (2005) 126 Cal.App.4th 993, 999, 24 Cal.Rptr.3d 474.)
The substantive law governing this appeal is also well established. In Powers v. Dickson, Carlson & Campillo (1997) 54 Cal.App.4th 1102, 1108-1109, 63 Cal.Rptr.2d 261 (Powers), we explained: "As a general rule, a written agreement to arbitrate a future controversy is valid *411 and enforceable and requires no special waivers or provisions. Exceptions to the general rule may apply if the arbitration provision is included within an adhesion contract or the scope of the arbitration provision is ambiguous." In Powers, we addressed an arbitration dispute between an attorney and client, and found no ethical proscription against including "in an initial retainer agreement with a client a provision requiring the arbitration of both fee disputes and legal malpractice claims." (Id. at p. 1109, 63 Cal.Rptr.2d 261.) The parties advance no reason why the same would not be true in the accountancy context.
"`A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract.' (Code Civ. Proc., § 1281.) `[A]rbitration has become an accepted and favored method of resolving disputes [citations], praised by the courts as an expeditious and economical method of relieving overburdened civil calendars [citation].' [Citation.] `Consequently, courts will "`indulge every intendment to give effect to such proceedings.'"' [Citation.]" (Powers, supra, 54 Cal.App.4th at p. 1109, 63 Cal. Rptr.2d 261.)
Plaintiff first argues as a matter of contractual interpretation that the retainer agreement's arbitration clause applies only to fee disputes, not malpractice claims, and therefore does not cover plaintiff's cause of action. "Our Supreme Court long ago established `[t]he interpretation of a written instrument, even though it involves what might properly be called questions of fact [citation], is essentially a judicial function to be exercised according to the generally accepted canons of interpretation so that the purposes of the instrument may be given effect. [Citations.] ... It is therefore solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence. [Citation.]' The question must be decided de novo by this court, unless the interpretation depends upon extrinsic evidence. [Citations.]" (Powers, supra, 54 Cal.App.4th at p. 1111, 63 Cal.Rptr.2d 261.) As plaintiff has never identified any extrinsic evidence of intent in support of her proffered interpretation, we proceed with our independent review.
"`We interpret the intent and scope of the agreement by focusing on the usual and ordinary meaning of the language used and the circumstances under which the agreement was made.' [Citations.] `A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties.' [Citations.] `The court must avoid an interpretation which will make a contract extraordinary, harsh, unjust, or inequitable.' [Citation.] [¶] `In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist.' [Citation.] Where the language in a contract is ambiguous, the contract should be interpreted most strongly against the party who prepared it. [Citations.]" (Powers, supra, 54 Cal.App.4th at pp. 1111-1112, 63 Cal.Rptr.2d 261.)
Plaintiff's reading of the retainer agreement's arbitration provisionthat it was narrowly drafted to apply only to fee disputes, leaving the client's prospective malpractice claims outside its purviewis not tenable. First, although fee-related matters predominate in the retainer agreement, the agreement as a whole was not limited to fee issues. Rather, it concerned the entire scope of services Gursey was to *412 render. Second, the arbitration provision was broadly drafted to subject "[a]ny controversy, claim, or dispute relating to our unpaid fees for professional services and costs rendered under this Agreement" to binding arbitration. Under that provision's ordinary and usual meaning, it would certainly implicate a malpractice claim arising out of the rendition of services for the dissolution proceedings. While it is possible to imagine a malpractice claim that would fall outside that provision's plain terms  for instance, a claim arising after all the fees had been paid or one concerning services provided under a different agreement  plaintiff's claim arose in the context of unpaid fees for the contracted-for services.
Moreover, the provision's next sentence made it clear that in the event Gursey sought to arbitrate a dispute over unpaid fees, plaintiff was required to assert her malpractice claims as a means of counterclaim or defense: "Should you contend that any services were performed improperly or below the standard of care you must raise that defense in the arbitration proceeding as an offset to, or reduction, discharge or complete elimination of the fees we contend you owe." Given the contract's broad definition of claims subject to arbitration and the specific requirement that malpractice-type claims must be asserted in the arbitration proceeding, plaintiff could not have reasonably understood the arbitration provision "to concern exclusively financial matters."[6] (Powers, supra, 54 Cal.App.4th at p. 1113, 63 Cal. Rptr.2d 261.)
As such, plaintiff's reliance on Lawrence v. Walzer & Gabrielson (1989) 207 Cal. App.3d 1501, 256 Cal.Rptr. 6 (Lawrence) is misplaced. In Lawrence, the retainer agreement's arbitration provision was part of "an agreement devoted almost exclusively to financial matters." (Id. at p. 1506, 256 Cal.Rptr. 6.) The defendant law firm had drafted the agreement and sought to compel arbitration of its client's malpractice claim, based solely on general language in a phrase that was embedded in a discussion of fee-related matters: "`In the event of a dispute between us regarding fees, costs or any other aspect of our attorney-client relationship, the dispute shall be resolved by binding arbitration.'" (Ibid., italics added.) The appellate court, applying "`the doctrine of ejusdem generis ... which states that where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated ...,'" found "the arbitration clause appears to be limited to disputes concerning financial matters such as fees and costs and is most likely to be so viewed by a prospective client to whom the proposed agreement is tendered by the law firm." (Ibid.) Through application of that interpretive canon, the Lawrence court "avoid[ed] construing the retainer provisions as a document which misleadingly appears to the client to deal almost exclusively with financial matters, while extracting from her a significant yet inconspicuous relinquishment of the client's rights regarding future *413 claims of malpractice." (Id. at pp. 1506-1507, 256 Cal.Rptr. 6, fn. omitted.)
In contrast, Gursey's arbitration clause specifically identified such malpractice claims to the client and required that they be raised as part of the fee-related arbitration. (See Powers, supra, 54 Cal.App.4th at pp. 1112-1113, 63 Cal.Rptr.2d 261 ["Unlike the arbitration provision in Lawrence, [supra, 207 Cal.App.3d 1501, 256 Cal.Rptr. 6] . . . [the subject] arbitration provisions unambiguously apply to legal malpractice claims as well as fee disputes."].) There simply was nothing ambiguous or misleading about the arbitration provision in the Gursey retainer agreement.
Nor do we find our decision in Pratt v. Gursey, Schneider & Co. (2000) 80 Cal. App.4th 1105, 95 Cal.Rptr.2d 695 supportive of plaintiff's argument. The arbitration agreement in dispute in that case was not the same agreement signed by plaintiff and Gursey in this case. In our earlier opinion, we dismissed Gursey's appeal, holding that the arbitration agreement contained an unambiguous waiver of appellate rights following arbitration, and that any ambiguity created by inconsistent references to contractual and judicial arbitration did not affect the parties' broad waiver of the right to appeal "any judgment" or "any order." (Id. at p. 1110, 95 Cal. Rptr.2d 695.) The issue presented in Gursey's earlier appeal is not the issue presented in this case, and the decision provides no support for plaintiff's position here. It is well-settled that cases are not authority for issues not considered. (McDowell & Craig v. City of Santa Fe Springs (1960) 54 Cal.2d 33, 38, 4 Cal.Rptr. 176, 351 P.2d 344.) In any event and contrary to plaintiff's assertion, the fact that the retainer agreement in Pratt, supra, 80 Cal.App.4th 1105, 95 Cal.Rptr.2d 695 specified that claims "`arising out of this agreement or the performance of services pursuant thereto'" shall be subject to binding arbitration does not reasonably tend to show that the new arbitration provision now before us was intended to apply solely to fees, not performance. (Id. at p. 1106, 95 Cal.Rptr.2d 695, emphasis added.) The retainer agreement that plaintiff accepted contained a provision that specifically required arbitration of malpractice claims.
Plaintiff cannot reasonably contend that her malpractice claim falls outside the intended reach of the arbitration provision because she was not aware of her claim's existence at the time of arbitration. By agreeing to a contract that imposed on her the obligation to raise malpractice claims as part of the arbitration, plaintiff implicitly accepted the duty to make a reasonable investigation into the existence of any such claims that arose out of the services Gursey rendered and billed for. It is undisputed that plaintiff's malpractice claim is premised on precisely those services and that the operative facts were available to her at the time of Gursey's arbitration demand. Plaintiff alleged that Gursey's malpractice arose prior to, and culminated in, the marital settlement reached in the spring of 2002, with the final dissolution judgment entered on June 18, 2002. The arbitration did not take place until June of 2003.
Plaintiff alleges no facts that would excuse or justify her failure to discover the salient facts at the time of the arbitration. She does not assert that Gursey did anything to prevent her from discovering those facts, or that she could not have discovered them by reasonable efforts. Instead, she merely contends that she did not become "aware of the facts constituting Gursey's negligence until October 2003, after the fee arbitration had concluded." According to plaintiff, she discovered the operative facts when she retained an *414 independent accountant to review the financial records used in connection with the dissolution action. The only legitimate inference based on the record below was that plaintiff could have discovered those facts in a timely fashion if she had made a reasonable effort.
Certainly, plaintiff had a strong incentive to diligently discover facts supporting her claim of professional negligence: Gursey sought to recover close to $30,000 in unpaid fees, and the retainer agreement specified that she could reduce, discharge, or eliminate her liability for those fees by contending "that any services were performed improperly or below the standard of care." Further, as discussed above, the only way she could seek affirmative malpractice damages beyond Gursey's fees in a civil action was to prevail on that claim at arbitration. Plaintiff's apparent failure to perceive that the retainer agreement imposed such a duty  whether due to her failure to read or understand the significance of that unambiguous arbitration provision"may not be used to invalidate a written arbitration provision." (Powers, supra, 54 Cal. App.4th at p. 1109, 63 Cal.Rptr.2d 261.)
Next, plaintiff argues that the retainer agreement, by its strict terms, permits a subsequent malpractice claim such as plaintiff's because she failed to assert it in connection with the arbitration. Plaintiff points to the arbitration provision in paragraph nine that prevents her from asserting a malpractice claim "as a defense in the arbitration proceeding and then again as a separate civil action for affirmative relief" where the arbitrator determines that her recovery was limited to her fee balance. Since plaintiff did not raise such a defense during arbitration and the arbitrator had no occasion to make such a determination, plaintiff asserts that the contractual bar does not apply to her. Plaintiff's argument rests on an extraordinary and self-contradictory interpretation of the agreement. As explained above, by its plain terms, the agreement required plaintiff to raise her malpractice claims in connection with the arbitration. The quoted provision obviously would come into play only if she had done so; it cannot be reasonably interpreted to excuse her noncompliance.
In a closely related but unmeritorious argument, plaintiff contends that the strict terms of the retainer agreement serve to bar Gursey from relying on the arbitration agreement and award as a bar to her malpractice action. Plaintiff points to the following provision from paragraph nine of the agreement (emphasis added): "Should you raise such a [malpractice] claim in the arbitration proceeding, and also file a separate civil action in Court, raising the same claim of improper services performed below the standard of care, we shall, in that instance only be permitted to show the Court that this claim was made in the arbitration proceeding and therefore is a bar to prevent you from proceeding with the civil action." Plaintiff argues that this language means that a prior arbitration judgment can serve as a bar to a future malpractice claim only if plaintiff raised the claim as a defense during the arbitration, but not if plaintiff violated the agreement's plain terms by failing to present such a claim to the arbitrator in the first place.
Once again, "[a] contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties." (Civ.Code, § 1643; Powers, supra, 54 Cal.App.4th at pp. 1111-1112, 63 Cal.Rptr.2d 261.) We reject plaintiff's interpretation because it would frustrate the parties' clear, objective intent in favor of *415 imposing a highly partisan, hypertechnical reading that would allow one party to use hindsight to redraft the contract and reallocate the parties' agreed-upon obligations.
Plaintiff alternatively contends that if the arbitration provision required her to assert her malpractice allegations in connection with the arbitration, it is unenforceable on grounds of unconscionability. However, plaintiff forfeited that contention by failing to raise it in opposition to the arbitration. In Moncharsh v. Heily & Blase (1992) 3 Cal.4th 1, 31, 10 Cal.Rptr.2d 183, 832 P.2d 899 (Moncharsh), our Supreme Court "held that if a party believes the entire contractual agreement or a provision for arbitration is illegal, it must oppose arbitration on this basis before participating in the process or forfeit the claim." (Cummings v. Future Nissan (2005) 128 Cal.App.4th 321, 328, 27 Cal. Rptr.3d 10.) It does not appear that plaintiff opposed Gursey's initial arbitration demand on any ground, and it is clear that plaintiff did not oppose Gursey's petition to confirm the arbitrator's award.[7] Consequently, she forfeited her unconscionability claim.
Plaintiff argues that the Moncharsh forfeiture rule does not apply to her because Gursey's arbitration provision covers only fee disputes, not malpractice claims. As explained above, that interpretation is mistaken; the retainer agreement unambiguously required plaintiff to raise her malpractice contentions in connection with the fee arbitration. All the operative facts for challenging the legality of the arbitration provision were available to plaintiff at the time of the arbitration demand, and there is nothing in the record to suggest that Gursey did anything to prevent her from making such a challenge. Once again, plaintiff's failure to appreciate the arbitration provision's plain meaning does not excuse her delay. (See Powers, supra, 54 Cal.App.4th at p. 1109, 63 Cal.Rptr.2d 261 ["The Powers contend that the arbitration provisions are unenforceable because they did not carefully read the agreements, did not understand the significance of the arbitration provisions, and did not knowingly waive their right to a jury trial in a legal malpractice action. As a general rule, such arguments may not be used to invalidate a written arbitration provision."].)
In any event, the record below discloses none of the hallmarks of a contract of adhesion. (See Powers, supra, 54 Cal. App.4th at p. 1110, 63 Cal.Rptr.2d 261.) And even assuming that the arbitration provision was procedurally unconscionable, plaintiff must also show that it is substantively unconscionableoverly harsh or one-sidedwhich she has failed to do. (See Armendariz v. Foundation Health Psychcare Services, Inc. (2000) 24 Cal.4th 83, 113-120, 99 Cal.Rptr.2d 745, 6 P.3d 669.)
Contrary to plaintiff's assertion, the arbitration provision is neither unduly one-sided nor oppressive. Under the terms of the retainer agreement, Gursey could compel plaintiff to arbitrate its entitlement to unpaid fees. If it did so, plaintiff was obligated to assert any related malpractice claims as a defense/offset, so that any malpractice damages would be assessed first against Gursey's fees. It is important to note, however, that the arbitration provision did not attempt to impose a monetary ceiling on a potential malpractice *416 recovery; plaintiff did not contract away her right to receive a malpractice award exceeding her accountancy fees. Instead, an arbitral finding that her malpractice damages exceeded Gursey's fees would not only eliminate her obligation to pay such fees, but entitle her to file a malpractice action to recover the balance of her uncompensated loss.[8] To be sure, this would require plaintiff to take an additional step, but it would not be an especially onerous one. Plaintiff is mistaken in contending that she had nothing to gain  and that Gursey had nothing to lose  by litigating malpractice as part of the fees-related arbitration. To the extent her malpractice damages were found equal to or less than her unpaid fees, she would be fully compensated through the arbitration. If her damages were found to exceed Gursey's fees, plaintiff could proceed to litigate the matter in a civil court, having already received a partial damages award that could not be appealed. While plaintiff constructs arguments about the unfairness of the requirement to arbitrate malpractice claims, the fact remains the provision was not unduly onerous, and had plaintiff availed herself of arbitration as required by the agreement, she stood to benefit if her claim had merit.
In sum, the arbitration provision's ordinary and usual meaning, when read in its proper context, is plainand contrary to plaintiff's proffered interpretations. As the effect of that unambiguous meaning is not extraordinary, harsh, unjust, or inequitable, we have no occasion to construe the provision against Gursey.
Finally, plaintiff argues that the principles of res judicata and collateral estoppel do not apply to bar her malpractice claim because the malpractice issue was never raised during the arbitration, much less decided in Gursey's favor. We reject that argument because it is premised on the same faulty assertions that informed plaintiff's other contentions. It was plaintiff's unjustified failure to comply with the arbitration provision that accounted for the arbitrator's failure to assess her malpractice claim.
Our Supreme Court has explained that plaintiff's reading of this state's issue and claim preclusion precedent is too narrow: "[U]nder what circumstances is a matter to be deemed decided by the prior judgment? Obviously, if it is actually raised by proper pleadings and treated as an issue in the cause, it is conclusively determined by the first judgment. But the rule goes further. If the matter was within the scope of the action, related to the subject-matter and relevant to the issues, so that it could have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged. The reason for this is manifest. A party cannot by negligence or design withhold issues and litigate them in consecutive actions. Hence the rule is that the prior judgment is res judicata on matters which were raised or could have been raised, on matters litigated or litigable." (Sutphin v. Speik (1940) 15 Cal.2d 195, 202, 99 P.2d 652; Tensor Group v. City of Glendale (1993) 14 Cal. App.4th 154, 160, 17 Cal.Rptr.2d 639.) As the Sutphin court explained, this res judicata principle also "`operates to demand of a defendant that all his defenses to the cause of action urged by the plaintiff be asserted under the penalty of forever losing the right to thereafter so urge them.' [Citation.]" (Id. at p. 202, 17 Cal.Rptr.2d 639.)
*417 Here, not only could plaintiff have raised her malpractice claim during arbitration, but the arbitration provision required it. There was nothing out of the ordinary in this requirement, as plaintiff's malpractice claim would have been a compulsory cross-complaint had the fee dispute simply been litigated in superior court. (K.R.L. Partnership v. Superior Court (2004) 120 Cal. App.4th 490, 498-499, 15 Cal.Rptr.3d 517.)
For that reason, plaintiff's reliance on Liska v. The Arns Law Firm (2004) 117 Cal.App.4th 275, 12 Cal.Rptr.3d 21 (Liska) is misplaced. The Liska court construed the provisions of the mandatory fee dispute statute (MFA) in Business and Professions Code section 6200 et seq. and held that a client who lost a binding fee arbitration could pursue a lawsuit against his attorney predicated on the same misconduct allegations on which the fee dispute was predicated. (Liska, supra, 117 Cal. App.4th at p. 278, 12 Cal.Rptr.3d 21.) The binding fees arbitration in Liska was governed by the terms of the MFA, which were critically different from those in Gursey's retainer agreement. "[T]he MFA strictly limits the scope of the arbitration that the client may demand to the amount of the reasonable fees (or costs) to which the attorney is entitled. The MFA expressly does `not apply' to `[c]laims for affirmative relief against the attorney for damages or otherwise based upon alleged malpractice or professional misconduct, except as provided in subdivision (a) of [Business and Professions Code s]ection 6203.'" (Liska, supra, 117 Cal.App.4th at p. 282, 12 Cal.Rptr.3d 21.) As the Liska court explained, Business and Professions Code, section 6201, subdivision (d) "does not prohibit the client from filing a subsequent action against the attorney, nor does it provide that an action may be filed only if the client prevails in the arbitration." (Liska, supra, 117 Cal.App.4th at p. 283, 12 Cal.Rptr.3d 21.)
The arbitration provisions in the contract plaintiff signed, however, were contrary to those in the MFA. It is a fundamental point that the scope of arbitration is a matter of agreement between the parties. (Moncharsh, supra, 3 Cal.4th at pp. 8-9, 10 Cal.Rptr.2d 183, 832 P.2d 899; see Liska, supra, 117 Cal.App.4th at p. 284, 12 Cal.Rptr.3d 21.)

DISPOSITION
The judgment is affirmed. The parties are to bear their own costs on appeal.
I concur: TURNER, P.J.
ARMSTRONG, J., Dissenting.
I respectfully dissent.
Plaintiff sued Gursey for professional negligence in rendering accounting services in connection with her divorce proceedings. She alleged that she discovered the facts underlying her malpractice action several months after Gursey instituted and won an arbitration proceeding regarding its unpaid fees. On Gursey's demurrer, the trial court found that the principles of res judicata and waiver barred plaintiff's lawsuit, due to her failure to assert the malpractice claim in the prior arbitration.
In affirming that order, the majority takes judicial notice, pursuant to Evidence Code section 452, subdivision (h), of the terms of the Litigation Services Agreement between the parties, declares its provisions "unambiguous" and plaintiff's interpretation "not tenable," and rejects plaintiff's contention that the arbitration provision as interpreted by Gursey is unconscionable. The majority then discovers an implied term in the Litigation Services Agreement which, it rules, imposed on her "a duty to make a reasonable investigation into the existence [of] any [malpractice] claim that arose out of the services Gursey *418 rendered and billed for," not within the statute of limitations, but prior to the conclusion of the arbitration proceeding. Based upon these findings, the majority concludes that plaintiff's failure to arbitrate her malpractice claim as a defense to Gursey's fee claim, notwithstanding her ignorance of the claim at that time, "resulted in the forfeiture of her right to sue Gursey for malpractice."
In my view, the trial court misconstrued its task, with the result that the hearing on demurrer was improperly "turned into a contested evidentiary hearing through the guise of having the court take judicial notice of documents whose truthfulness or proper interpretation are disputable." (Joslin v. H.A.S. Insurance Brokerage (1986) 184 Cal.App.3d 369, 375, 228 Cal. Rptr. 878.) I would therefore reverse the judgment of dismissal.
Neither res judicata nor waiver, the two grounds upon which the trial court relied in sustaining Gursey's demurrer, are applicable to the facts of this case.
Res judicata "gives certain conclusive effect to a former judgment in subsequent litigation involving the same controversy. It seeks to curtail multiple litigation causing vexation and expense to the parties and wasted effort and expense in judicial administration." (7 Witkin, Cal. Procedure (4th ed. 1997) Judgments § 280, p. 820, emphasis deleted.) The doctrine of res judicata has two aspects. A subsequent action on the same cause of action is barred by the prior judgment. (Id. at § 281, p. 821.) If the subsequent action involves a different claim, the parties will be precluded from relitigating issues that they actually litigated in the first action. (Ibid.)
Here, Gursey readily admits that the issue of accounting malpractice was not litigated in the arbitration proceeding.[1] It argues, however, that "Under California law, the doctrines of res judicata and collateral estoppel are not limited to issues actually litigated: `If the matter was within the scope of the action, related to the subject-matter and relevant to the issues, so that it could have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged.' Sutphin v. Speik (1940) 15 Cal.2d 195, 202, 99 P.2d 652. Therefore, `the prior judgment is res judicata on matters which were raised or could have been raised, on matters litigated or litigable.'"
Gursey is correct that res judicata, that is, claim preclusion, bars the subsequent litigation of the claim decided in the arbitration  that is, the fees plaintiff owed to Gursey. Sutphin, supra, 15 Cal.2d 195, 99 P.2d 652, is good authority for the proposition that because the issue of fees has already been decided in the arbitration proceeding, plaintiff may not assert a new theory of why she does not owe the fees in a subsequent lawsuit. However, Sutphin does not support Gursey's position that plaintiff may not litigate her malpractice claim simply because Gursey's entitlement to fees has already been litigated.
In Sutphin, supra, 15 Cal.2d 195, 99 P.2d 652, the plaintiff sued the defendant for royalties equal to five percent of the total production of two oil wells leased to plaintiff's assignor. The defendant challenged plaintiff's ownership interest in the royalties, contending that plaintiff "had no interest in either well number 3A or 4." (Id. at p. 199, 99 P.2d 652.) The trial court found in favor of plaintiff, declaring *419 "plaintiff is now and ever since the 7th day of January, 1927, has been the owner of said five per cent of the total production of oil, gas and other hydrocarbons produced, saved or sold from said premises...." (Id. at p. 197, 99 P.2d 652.) Subsequently, the plaintiff again sued defendant to recover royalties accruing after entry of the judgment in the former action. Defendant attempted to raise a new and different defense to the action, based not on the plaintiff's lack of ownership interest in the royalties, but claiming that the oil which the wells extracted was not located on the property subject to plaintiff's assignor's lease. The trial court found, and the appellate court affirmed, that res judicata mandated that judgment for the plaintiff be entered: "... the rule is that the prior judgment is res judicata on matters which were raised or could have been raised, on matters litigated or litigable." (Id. at p. 202, 99 P.2d 652.) Thus, because the defendant could have challenged in the prior action the plaintiff's right to receive royalties based on this second theory, he was foreclosed from raising it in the subsequent lawsuit.
There is nothing in the language of Sutphin which supports Gursey's contention that any cause of action other than the one litigated  there the royalty claim and here the fee claim  is precluded by the doctrine of res judicata. Indeed, in an opinion rendered following a petition for rehearing, the Supreme Court in Sutphin cautioned against an overbroad interpretation of its holding: "Defendant in his petition for rehearing challenges certain portions of our opinion, which he interprets as meaning that in a second suit on a different cause of action, any issue which could have been raised in the first suit is res judicata in the second, even though not actually determined in the first. This is not our holding, and the opinion must be read in connection with the facts of this case, and with an understanding of the issue which was, in fact, decided in the former action." (Sutphin, supra, 15 Cal.2d at p. 204, 99 P.2d 652, emphasis added.) Like the defendant in Sutphin, the majority overstates and misconstrues the holding of the case.[2]
If res judicata applies at all in this case, it applies only in the second sense, that of collateral estoppel, or issue preclusion. "In general, collateral estoppel precludes a party from relitigating issues litigated and decided in a prior proceeding. (People v. Sims (1982) 32 Cal.3d 468, 477, 186 Cal. Rptr. 77, 651 P.2d 321; Teitelbaum Furs, Inc. v. Dominion Ins. Co., Ltd. (1962) 58 Cal.2d 601, 604, 25 Cal.Rptr. 559, 375 P.2d 439.) `Traditionally, we have applied the *420 doctrine only if several threshold requirements are fulfilled. First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.' (Lucido v. Superior Court (1990) 51 Cal.3d 335, 341, 272 Cal.Rptr. 767, 795 P.2d 1223.)" (Gikas v. Zolin (1993) 6 Cal.4th 841, 848-849, 25 Cal. Rptr.2d 500, 863 P.2d 745.) Even if these threshold requirements are satisfied, the doctrine will not be applied if such application would not serve its underlying fundamental principles. (Lucido v. Superior Court, supra, 51 Cal.3d. at p. 339, 272 Cal.Rptr. 767, 795 P.2d 1223.)
The malpractice claim in this case simply does not meet the first three requirements of collateral estoppel: The issue of whether or not plaintiff owed Gursey the claimed fees is not identical to the issue of whether Gursey's professional services fell below the standard of care; it is undisputed that the malpractice claim was not litigated in the prior adjudication; and a finding that the professional services upon which the fees were based met the standard of care for the profession is simply not necessary to an award of fees for services rendered. For these reasons, I conclude that the trial court erred in applying the doctrine of res judicata to the facts of this case.
Neither should the trial court have sustained the demurrer based on waiver.
It is `black-letter law' that a demurrer tests the pleading alone. (5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 895, p. 334.) Like the trial court, we must accept as true the properly pleaded and implied factual allegations of the complaint; read the complaint in context; construe it liberally; and give it a reasonable interpretation, with a view to obtaining substantial justice between the parties. (Madrid v. Perot Systems Corp. (2005) 130 Cal.App.4th 440, 452, 30 Cal.Rptr.3d 210; Searle v. Wyndham International, Inc. (2002) 102 Cal.App.4th 1327, 126 Cal. Rptr.2d 231; Marina Tenants Assn. v. Deauville Marina Development Co. (1986) 181 Cal.App.3d 122, 127, 226 Cal.Rptr. 321.) "`When any ground for objection to a complaint or cross-complaint does not appear on the face of the pleading, the objection may be taken by answer.' (Code Civ. Proc., § 430.30(b).) `[D]efendants cannot set forth allegations of fact in their demurrers which, if true, would defeat plaintiff's complaint.' (Fuhrman v. California Satellite Systems (1986) 179 Cal. App.3d 408, 422-423 [231 Cal.Rptr. 113].)" (Gould v. Maryland Sound Industries, Inc. (1995) 31 Cal.App.4th 1137, 1144, 37 Cal.Rptr.2d 718.)
"In determining the sufficiency of a complaint against demurrer a court will consider matters that may be judicially noticed. (Javor v. State Board of Equalization (1974) 12 Cal.3d 790, 796, 117 Cal. Rptr. 305, 527 P.2d 1153; Code Civ. Proc., §§ 430.30, 430.70.) `Accordingly, a complaint otherwise good on its face is subject to demurrer when facts judicially noticed render it defective.' (Iram Enterprises v. Veditz (1981) 126 Cal.App.3d 603, 608 [179 Cal.Rptr. 1].)" (Joslin v. H.A.S. Insurance Brokerage, supra, 184 Cal.App.3d at p. 374, 228 Cal.Rptr. 878.)
However, "Taking judicial notice of a document is not the same as accepting the truth of its contents or accepting a particular interpretation of its meaning. (See Middlebrook-Anderson Co. v. Southwest *421 Sav. Loan Assn. (1971) 18 Cal.App.3d 1023, 1038, 96 Cal.Rptr. 338.) On a demurrer a court's function is limited to testing the legal sufficiency of the complaint. (Marina Tenants Assn. v. Deauville Marina Development Co. (1986) 181 Cal.App.3d 122, 127, 226 Cal.Rptr. 321.) `A demurrer is simply not the appropriate procedure for determining the truth of disputed facts.' (Ramsden v. Western Union (1977) 71 Cal. App.3d 873, 879, 138 Cal.Rptr. 426.) The hearing on demurrer may not be turned into a contested evidentiary hearing through the guise of having the court take judicial notice of documents whose truthfulness or proper interpretation are disputable. (See Del E. Webb Corp. v. Structural Materials Co. (1981) 123 Cal.App.3d 593, 605, 176 Cal.Rptr. 824.)" (Joslin v. H.A.S. Insurance Brokerage, supra, 184 Cal.App.3d 369, 375, 228 Cal.Rptr. 878.)
"Various tests or rules have been suggested to determine whether a court which has taken judicial notice of a document may take the further step of accepting its truth or adopting a proposed interpretation of its meaning. . . . [An] approach, which provides maximum flexibility while still insisting disputed factual issues cannot be resolved on demurrer, proposes `judicial notice of matters upon demurrer will be dispositive only in those instances where there is not or cannot be a factual dispute concerning that which is sought to be judicially noticed.' (Cruz v. County of Los Angeles (1985) 173 Cal.App.3d 1131, 1134 [219 Cal.Rptr. 661].)" (Joslin v. H.A.S. Insurance Brokerage, supra, 184 Cal. App.3d at p. 375, 228 Cal.Rptr. 878.)
We must look first, then, to the terms of the Litigation Services Agreement to determine whether there is or can be a dispute that plaintiff waived her right to litigate her malpractice claim by failing to raise it in the fee arbitration.
The Litigation Services Agreement states that, unless Gursey elects to sue in small claims court, "fee disputes" must be submitted to arbitration: "Any controversy, claim, or dispute relating to our unpaid fees for professional services and costs rendered under this Agreement shall be submitted for binding arbitration to the American Arbitration Association in accordance with its Commercial Arbitration Rules, unless we elect to pursue collection in Small Claims Court. . . ." Thus, by agreeing to this provision, Gursey waived its right to sue plaintiff in superior court to recover any fees it claims she owed.
The Litigation Services Agreement continues: "Should you contend that any services were performed improperly or below the standard of care you must raise that defense in the arbitration proceeding as an offset to, or reduction, discharge or complete elimination of the fees we contend you owe. In the event the arbitrator eliminates all of our fees and you still believe you have a cause of action not yet satisfied you may bring such action in a Court of Law for affirmative relief. However, if the arbitrator determines that your claim does not exceed our contended fees you then will be prevented from bringing the same contention in any separate civil action. [¶] Furthermore, in order to protect your rights and our rights to a trial on any such action in Court for affirmative relief, we agree that neither the findings of the arbitrator(s) or any Judgment entered confirming such arbitration award shall be determinative of any issue in your action in Court for affirmative relief, nor shall they be admissible for the purpose of said trial. You may not assert such a claim as a defense in the arbitration proceeding and then again as a separate civil action for affirmative relief, if the arbitrator determined that your recovery was limited to your fee balance. Should you raise such a claim in the arbitration proceeding, and *422 also file a separate civil action in Court, raising the same claim of improper services performed below the standard of case, we shall, in that instance only, be permitted to show the Court that this claim was made in the arbitration proceeding and therefore is a bar to prevent you from proceeding with the civil action."
The majority cites the relevant law, as follows: "As a general rule, a written agreement to arbitrate a future controversy is valid and enforceable and requires no special waivers or provisions. Exceptions to the general rule may apply if the arbitration provision is included within an adhesion contract or the scope of the arbitration provision is ambiguous." (Powers v. Dickson, Carlson Campillo (1997) 54 Cal.App.4th 1102, 1108-1109, 63 Cal. Rptr.2d 261.) The majority continues: "`We interpret the intent and scope of the agreement by focusing on the usual and ordinary meaning of the language used and the circumstances under which the agreement was made. A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties. The court must avoid an interpretation which will make a contract extraordinary, harsh, unjust, or inequitable. [¶] In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who cause the uncertainty to exist. Where the language in a contract is ambiguous, the contract should be interpreted most strongly against the party who prepared it.'" (Id., at pp. 1111-1112, 63 Cal.Rptr.2d 261, internal citations omitted.)
I have no quarrel with the foregoing as a correct statement of law. However, the majority and I part company in applying that law to the facts of this case.
Plaintiff alleged in her complaint that the Litigation Services Agreement "does not require that all claims by plaintiff for professional negligence be submitted to arbitration." The usual and ordinary meaning of the first sentence of the arbitration provision is that fee disputes must be arbitrated (unless Gursey opts to pursue the claim in Small Claims Court). Plaintiff's malpractice claim is not a fee dispute. The Litigation Services Agreement does not provide that "any claim relating to our professional negligence shall be submitted for binding arbitration." Under her interpretation of the agreement, she was required to pursue her malpractice claim as a defense to the fee dispute arbitration if and only if she was claiming that the fees were not owed on account of Gursey's malpractice. There is no evidence that this was the case. To the contrary, it appears that plaintiff did not contest that she owed Gursey the fees claimed in the arbitration. Consequently, the circumstances contemplated in the Litigation Agreement  that plaintiff would be required to arbitrate a malpractice claim if she maintained that she did not owe Gursey the fees it claimed were outstanding on account of its malpractice  never occurred. I find this reading of the agreement completely consistent with its plain language and eminently reasonable. Moreover, "[W]here an ambiguous contract is the basis of an action, it is proper, if not essential, for a plaintiff to allege its own construction of the agreement.[3] So long as the pleading does not place a clearly erroneous construction upon the provisions of the contract, *423 in passing upon the sufficiency of the complaint, we must accept as correct plaintiff's allegations as to the meaning of the agreement. (Pigeon Point Ranch, Inc. v. Perot [supra] 59 Cal.2d [at p.] 233 [28 Cal.Rptr. 865, 379 P.2d 321] [overruled on another ground in Kowis v. Howard (1992) 3 Cal.4th 888, 12 Cal.Rptr.2d 728, 838 P.2d 250].)" (Marina Tenants Assn. v. Deauville Marina Development Co., supra, 181 Cal.App.3d at p. 128, 226 Cal.Rptr. 321.) Indeed, in my view, this interpretation renders the arbitration provision "lawful, operative, definite, reasonable, and capable of being carried into effect," as mandated by Powers v. Dickson, Carlson Campillo, supra, 54 Cal.App.4th at pp. 1111-1112, 63 Cal.Rptr.2d 261.
Disregarding Pigeon Point Ranch v. Perot, supra, the majority finds plaintiff's interpretation "not tenable," first, because the Litigation Services Agreement "concerned the entire scope of services Gursey was to render" and second, because "the arbitration provision was broadly drafted[4] to subject `[a]ny controversy, claim, or dispute relating to our unpaid fees for professional services and costs rendered under this Agreement' to binding arbitration. Under that provision's ordinary and usual meaning, it would certainly implicate a malpractice claim arising out of the rendition of services for the dissolution proceedings. While it is possible to imagine a malpractice claim that would fall outside that provision's plain terms  for instance, a claim arising after all the fees had been paid or one concerning services provided under a different agreement  plaintiff's claim arose in the context of unpaid fees for the contracted  for services."[5] Thus, the majority concedes that it is at best unclear how the parties agreed to handle a malpractice claim which was asserted independently of a fee dispute, for example, after plaintiff had paid Gursey's final bill. And it is not consistent with the rules of contract construction to suppose that the parties agreed that plaintiff would waive a malpractice claim she had not yet discovered if Gursey had instituted and won an arbitration proceeding, but she would not waive the very same claim so long as Gursey, for whatever reason (including its election to file the claim in Small Claims Court) did not initiate an arbitration.
In short, the majority relies upon an interpretation of an "implication" in the meaning of the words used in the arbitration provision, rather than the actual words themselves, to find a forfeiture of plaintiff's claim. In so doing, I believe the majority has settled on an interpretation which makes the contract "extraordinary, harsh, unjust, or inequitable," in violation of the proscription of Powers v. Dickson, Carlson Campillo, supra, 54 Cal.App.4th at pp. 1111-1112, 63 Cal.Rptr.2d 261.
Utilizing the rules applicable to judicially noticed documents as set forth in (Joslin v. H.A.S. Insurance Brokerage, supra, 184 Cal.App.3d at p. 375, 228 Cal.Rptr. 878.), I believe that, in order for Gursey to prevail on its demurrer, it was required to establish that the words "Any controversy, claim, or dispute relating to our unpaid fees for professional services and costs rendered under this Agreement shall be submitted for binding arbitration . . ." indisputably mean "Any controversy, claim, or dispute relating to our unpaid fees for professional services and costs, and any *424 claims for professional negligence in connection with professional services rendered under this Agreement shall be submitted for binding arbitration. . . ." Gursey did not, and cannot, meet this test.
Further, because plaintiff challenged the enforceability of the arbitration provision based on unconscionability, Gursey was required to establish that it is indisputable that an arbitration provision in a professional services contract which denies the client all relief for professional malpractice if the professional does not first institute an arbitration proceeding, or at best conditions the client's waiver of her rights on the professional's initiation of that proceeding; which permits the arbitrator to award affirmative relief only to the professional; which requires the client to prevail in not one but two proceedings in order to be compensated for the injury suffered; and which grants collateral estoppel effect to the arbitral findings in the subsequent proceeding only if those findings favor the professional; is fair, even-handed and conscionable, and therefore enforceable. Again, contrary to the conclusion of the majority, I find this arbitration scheme to be "extraordinary, harsh, unjust and inequitable."
Finally, the majority concludes that plaintiff waived her contention that the arbitration provision is unconscionable: "plaintiff forfeited that contention by failing to raise it in opposition to the arbitration. In Moncharsh v. Heily & Blase (1992) 3 Cal.4th 1, 31, 10 Cal.Rptr.2d 183, 832 P.2d 899, our Supreme Court `held that if a party believes the entire contractual agreement or a provision for arbitration is illegal, it must oppose arbitration on this basis before participating in the process or forfeit the claim.' (Cummings v. Future Nissan (2005) 128 Cal.App.4th 321, 328, 27 Cal.Rptr.3d 10.) It does not appear that plaintiff opposed Gursey's initial arbitration demand on any ground, and it is clear that plaintiff did not oppose Gursey's petition to confirm the arbitrator's award. Consequently, she forfeited her unconscionability claim." Again, the majority erroneously places a burden on plaintiff which is not hers. If Gursey wished to rely on plaintiff's failure to oppose the arbitration on the basis of unconscionability, it was required to unequivocally establish that fact. Here, we have only an arbitration award and its judicial confirmation, neither of which reveals the basis of plaintiff's defense to the claim arbitrated. Indeed, the record does not even establish that plaintiff participated in the arbitration, a necessary element of a forfeiture of the claim. (Ibid.)
In sum, I believe that plaintiff's complaint states a cause of action against Gursey for professional malpractice. I would therefore reverse the order of dismissal.
NOTES
[1] Also named in the operative pleading, plaintiff's first amended complaint of February 10, 2005, were Fred Silberberg and the law firm of Silberberg & Ross (collectively, Silberberg). Silberberg's demurrer was overruled. Silberberg is not a party to this appeal, which solely concerns plaintiff's cause of action against Gursey.
[2] These facts in this section are taken from the allegations in the first amended complaint and documents properly before the trial court in accordance with the standard of review on appeal. (Blank v. Kirwan (1985) 39 Cal.3d 311, 318, 216 Cal.Rptr. 718, 703 P.2d 58.)
[3] Silberberg contends that as part of the entry of judgment, plaintiff stipulated that counsel had not investigated the valuation of the parties' separate and community property assets, and that plaintiff was entering into the judgment freely and against counsel's advice, and releasing counsel from liability. Plaintiff acknowledges the existence of the stipulation and release, but alleges the recitals were false.
[4] Later, at the demurrer hearing, plaintiff's counsel conceded that, if her malpractice claim were permitted to go forward, she would be barred from recovering the fees awarded through the arbitration.
[5] The trial court overruled the Silberberg defendants' demurrer and granted them 30 days to answer the first amended complaint.
[6] Plaintiff's malpractice allegations concern Gursey's performance in connection with her marriage dissolution proceeding, which were services for which Gursey was retained. The dissent's hypothesis that the alleged malpractice might have occurred early in Gursey's retention and that plaintiff might have paid "in full" for those particular services has never been argued or alleged by plaintiff. In any event, the parties' unambiguous agreement required that plaintiff raise her malpractice claim as a defense or offset if she contended that any services were performed improperly or below the standard of care.
[7] The pleadings established that plaintiff was served with the arbitrator's award for fees and that judgment was entered in Gursey's favor on its unopposed petition to confirm that award. The trial court gave plaintiff every opportunity to plead that she opposed arbitration on the basis that the arbitration provision was unconscionable, but she failed to do so.
[8] There has been no argument that the arbitration provision denies plaintiff all malpractice relief unless Gursey first institutes an arbitration to recover its fees is mistaken. Had there been no fee dispute, the provision would not have taken effect.
[1] As plaintiff concedes, the doctrine of res judicata applies to an arbitration award. (Dial 800 v. Fesbinder (2004) 118 Cal.App.4th 32, 45, 12 Cal.Rptr.3d 711; Lehto v. Underground Constr. Co. (1977) 69 Cal.App.3d 933, 939, 138 Cal.Rptr. 419.)
[2] The majority also misapprehends the law of compulsory cross-complaints. Code Civ. Proc., § 426.30 provides: "(a) Except as otherwise provided by statute, if a party against whom a complaint has been filed and served fails to allege in a cross-complaint any related cause of action which (at the time of serving his answer to the complaint) he has against the plaintiff, such party may not thereafter in any other action assert against the plaintiff the related cause of action not pleaded. [¶] (b) This section does not apply if either of the following are established: [¶] (1) ... [¶] (2) The person who failed to plead the related cause of action did not file an answer to the complaint against him." Plaintiff's malpractice claim would have been a compulsory cross-complaint pursuant to this section only if she had the claim at the time she served her answer to Gursey's complaint for fees. We can find no case which would require a defendant to file a cross-complaint on a cause of action which she does not know to exist or waive her right to sue. Moreover, the pleadings in this case (complaint, arbitration award and confirmation of award) subject to demurrer do not establish that plaintiff filed an answer to Gursey's complaint in arbitration. Consequently, I do not agree that, under the facts of this case, plaintiff's malpractice action was a compulsory cross-complaint to Gursey's fee claim.
[3] Here, of course, the contract is not the basis of the action and consequently, plaintiff was not required to interpret it. Nonetheless, her interpretation satisfies the requirements of (Pigeon Point Ranch v. Perot (1963) 59 Cal.2d 227, 28 Cal.Rptr. 865, 379 P.2d 321).
[4] Saying that it was broadly drafted does not make it so. An arbitration clause that states only that it applies to unpaid fees is in fact not broadly drafted.
[5] This last statement is simply unsupported by the record. The pleadings do not reveal when Gursey's malpractice occurred, or whether plaintiff had paid in full the fees relating to those deficient services.