[No. A102926. First Dist., Div. Three. Mar. 30, 2004.]

GEORGE LISKA, Plaintiff and Appellant, v.
THE ARNS LAW FIRM et al., Defendants and Respondents.

**COUNSEL**

Susan Petro for Plaintiff and Appellant.

Robert S. Arns and Morgan C. Smith for Defendants and Respondents.

**OPINION**

**POLLAK, J.—** ■ May a client who loses a binding fee arbitration conducted pursuant to the mandatory fee arbitration statute (MFA), Business and Professions Code section 6200 et seq.,[1] file a subsequent action against the attorney predicated on the same allegations of misconduct or breach of contract that formed the basis of the fee dispute? We hold that the client may do so, but that the client may not seek to recover as damages any portion of the fee that the arbitrators awarded the attorney.

---

[1] All statutory references are to the Business and Professions Code unless otherwise noted.

Plaintiff George Liska hired the defendant law firm to represent him in a personal injury products liability action. The matter was settled after a trial date had been set but before trial began, which under the retainer agreement entitled the firm to a higher percentage of the settlement than if the matter had been settled before there was a trial date. Liska disputed the fees and demanded arbitration. The arbitrators found in favor of the firm. After the arbitrators' award became final, Liska filed suit against the law firm and several of its individual attorneys (collectively the firm), alleging causes of action for breach of contract and fraud. The firm demurred on the grounds that the suit was barred by the statute of limitations and by the doctrines of res judicata and collateral estoppel. The firm simultaneously petitioned the court to confirm the arbitrators' award. The trial court granted the petition to confirm the award, sustained the demurrer without leave to amend, and entered judgment accordingly. Liska appealed. We reverse the judgment insofar as it sustained the demurrer without leave to amend.

## BACKGROUND

According to the complaint, Liska hired The Arns Law Firm on December 11, 2000, to represent him in a product liability action arising out of an injury he suffered at work. Liska alleged that Attorneys Robert Arns, Morgan Smith, and Bryan Lamb told him that he could expect a recovery of approximately $1,600,000 and that "Arns and Smith would participate fully in plaintiff's case . . . ." The representation agreement provided that the firm would receive 33 1/3 percent of the recovered sum after costs were deducted if the matter settled before it was set for trial, and that the fee would rise to 40 percent if the matter settled after there was a trial date.

In December 2001, the court set the case for trial for the following November. In May 2002, the case went to mediation and settled for $600,000, which included the release of a $75,000 workers' compensation lien for $35,000 paid out of the settlement proceeds. After the settlement had been entered, Liska filed a "Client's Request for Resolution of a Fee Dispute" with the Bar Association of San Francisco. In his petition, Liska complained that Arns did not give the case the attention that Liska expected and the case demanded. He alleged that the firm was guilty of malpractice because the attorneys were unprepared for the mediation and strategized poorly. He estimated that if the case had been handled properly he would have recovered between $150,000 and $400,000 more than he did.

The arbitration panel found that there was "no evidence that the contingency fee agreement was unconscionable or otherwise reflected an inappropriate or unreasonable means of determining the fees for respondents' services," that Liska "acknowledged that he had entered into the [settlement]

agreement without qualification or condition," and that Liska "did not dispute the testimony of respondent to the effect that he had been satisfied and pleased at the outcome of the mediation." The panel stated that Liska "failed to introduce evidence that the amount of the settlement of the underlying action was unreasonable, or to rebut evidence presented by respondents which tended to support the reasonableness of the $600,000.00 settlement (including the settlement of a $75,000.00 worker's compensation lien for $35,000.00.)" The panel concluded that the amount of the settlement was "well within the reasonable range of settlement value for comparable cases in the Bay Area, particularly those involving capable and aggressive defense attorneys representing corporate defendants with strong motivation to vigorously defend the integrity of their products." The panel also concluded that there was no evidence that the settlement "had been improperly or unreasonably obtained," that Liska "had been fully informed of all relevant matters regarding his case, the mediation process and the potential verdict value of the matter prior to agreeing to compromise the underlying claims," and that the fee was fair and reasonable considering "the difficulty of the legal and factual issues involved in the underlying action, the result achieved and petitioner's informed consent to the fee agreement."

Subsequent to the issuance of the award, Liska filed a complaint against the firm and the individual attorneys who had worked on his case, alleging four causes of action. The first cause of action, for breach of contract, alleged that in addition to the written fee agreement, Arns and Smith agreed orally that they "would participate fully in plaintiff's case and represented to plaintiff that with the participation of Arns and Smith, plaintiff could expect a gross recovery in the range of $1,600,000." Liska alleged that the oral agreement was further amended on the day of the mediation of the underlying claim when Lamb promised Liska that if he would accept $600,000 in settlement, Liska would net $400,000, because the firm would take only one-third of the recovery and would not require reimbursement of its costs. He alleged that he signed the settlement agreement in reliance on this representation by Lamb. In his second, third and fourth causes of action, Liska alleged fraud in the forms of intentional and negligent misrepresentation, concealment, and making a promise without intent to perform. All of these causes of action alleged essentially the same facts: 1) that the firm promised to provide Liska with representation; 2) that Arns and Smith promised to fully participate in the representation; 3) that Arns and Smith would attempt to recover $1,600,000 on Liska's behalf; and 4) that Liska was promised a net recovery of $400,000 if he accepted the $600,000 settlement. Liska attached to the complaint a portion of the fee agreement with the firm and the settlement agreement in the underlying action.

Defendants demurred, arguing that the complaint was an attempt to vacate the arbitration award beyond the time allowed for such a motion, and that the

complaint was barred by res judicata and collateral estoppel because it addressed the same issues that were decided in the arbitration of the fee dispute. At the same time, the firm filed a petition to confirm the arbitration award. The firm also moved for sanctions against Liska under Code of Civil Procedure section 128.7. Liska opposed all three motions.

The trial court sustained the demurrer without leave to amend, and granted the petition to confirm the arbitration award. The order sustaining the demurrer stated only that the court had separately granted the petition to confirm the arbitration award and that the demurrer was sustained without leave to amend "[o]n the basis of this petition, the moving papers, the confirmation of this arbitration award, and good cause appearing." The court awarded the firm its costs, but denied the request for sanctions. The court then entered judgment on the arbitration award and provided that Liska take nothing on his complaint.

## DISCUSSION

■ We review a trial court's ruling on a demurrer independently. (*Ramirez v. Long Beach Unified School Dist.* (2002) 105 Cal.App.4th 182, 187 [129 Cal.Rptr.2d 128].) " 'Our only task in reviewing a ruling on a demurrer is to determine whether the complaint states a cause of action. Accordingly we assume that the complaint's properly pleaded material allegations are true and give the complaint a reasonable interpretation by reading it as a whole and all its parts in their context.' " (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 300 [58 Cal.Rptr.2d 855, 926 P.2d 1042].)

*Res judicata and collateral estoppel*

The MFA provides a procedure by which a client may resolve fee disputes with his or her attorney efficiently and without the necessity and expense of hiring a second attorney. The statute was enacted "in 1978 to provide for compulsory arbitration of fee disputes between California attorneys and clients. . . . The intent of the legislation was to provide an effective, expeditious, simple, low cost forum in which an attorney and a client may resolve a dispute over legal fees." (Hargarten, *Fine Tuning California's Mandatory Attorney Fee Arbitration Statute* (1982) 16 U.S.F. L.Rev. 411, fn. omitted.) The MFA "creates a procedure whereby local bar associations can adopt and sponsor systems for arbitrating fee disputes, subject to review by the Board of Governors of the State Bar. (§ 6200, subd. (d).)" (*Alternative Systems, Inc. v. Carey* (1998) 67 Cal.App.4th 1034, 1041 [79 Cal.Rptr.2d 567].) "The policy behind the mandatory fee arbitration statutes . . . is to alleviate the disparity in bargaining power in attorney fee matters which

favors the attorney by providing an effective inexpensive remedy to a client which does not necessitate the hiring of a second attorney. (Hargarten [, *supra*,] 16 U.S.F. L.Rev. 411, 415.) The process favors the client in that only the client can elect mandatory arbitration of a fee dispute; the attorney must submit the matter to arbitration if the client makes that election." (*Manatt, Phelps, Rothenberg & Tunney v. Lawrence* (1984) 151 Cal.App.3d 1165, 1174–1175 [199 Cal.Rptr. 246]; see also *Huang v. Cheng* (1998) 66 Cal.App.4th 1230, 1234 [78 Cal.Rptr.2d 550].)

When the MFA was first proposed, the Bar Association of San Francisco (BASF) sent a letter to the sponsoring senator explaining the need for a mandatory fee arbitration scheme. The letter explained that BASF had set up just such a structure for the following reason: "The number of complaints that the Association received on fee problems was greater than any other subject. In most cases, the complaints came from clients who were unsophisticated and poor. They became angered when they had no effective means to secure a hearing over a fee dispute. Many clients cannot afford a second lawyer and a lawsuit. [¶] Even if they could and they prevailed in the suit over fees, the cost of the second lawyer would often equal or exceed the amount in controversy in the fee dispute. [¶] Left with this situation, clients have turned to filing actions against the lawyer alleging malpractice in an effort to cause the lawyer to settle a fee dispute. This latter tactic has had an extremely unfortunate effect on malpractice insurance rates for lawyers. . . . [¶] We came to the conclusion that a mandatory arbitration system would be beneficial to clients and attorneys." (Frank E. Farella, letter to Sen. Peter M. Behr, Mar. 28, 1978.)

In order to keep the proceedings simple and low cost, the MFA strictly limits the scope of the arbitration that the client may demand to the amount of the reasonable fees (or costs) to which the attorney is entitled. The MFA expressly does "not apply" to "[c]laims for affirmative relief against the attorney for damages or otherwise based upon alleged malpractice or professional misconduct, except as provided in subdivision (a) of Section 6203." (§ 6200, subd. (b)(2).) The second paragraph of section 6203, subdivision (a), which was added to the statute in 1984, in turn provides that "[e]vidence relating to claims of malpractice and professional misconduct, shall be admissible only to the extent that those claims bear upon the fees, costs, or both, to which the attorney is entitled. The arbitrators shall not award affirmative relief, in the form of damages or offset or otherwise, for injuries underlying any such claim."[2] Finally, section 6204, subdivision (e)

---

[2] Section 6203, subdivision (a) provides in full as follows: "The award shall be in writing and signed by the arbitrators concurring therein. It shall include a determination of all the questions submitted to the arbitrators, the decision of which is necessary in order to determine the controversy. The award shall not include any award to either party for costs or attorney's

provides, "Except as provided in this section, the award and determinations of the arbitrators shall not be admissible nor operate as collateral estoppel or res judicata in any action or proceeding."

■ If the client should commence litigation against the attorney prior to the completion of the arbitration, the right to continue with the arbitration is lost. Section 6201, subdivision (d) provides, "A client's right to request or maintain arbitration under the provisions of this article is waived by the client commencing an action or filing any pleading seeking either of the following: [¶] (1) Judicial resolution of a fee dispute to which this article applies. [¶] (2) Affirmative relief against the attorney for damages or otherwise based upon alleged malpractice or professional misconduct." This provision prevents the client from having "two bites at the same apple *at the same time.*" (*Juodakis v. Wolfrum* (1986) 177 Cal.App.3d 587, 592 [223 Cal.Rptr. 95], italics added.) The section does not prohibit the client from filing a subsequent action against the attorney, nor does it provide that an action may be filed only if the client prevails in the arbitration.

■ Although an attorney must participate in arbitration under the MFA if requested by the client, the determination of the arbitrators is not binding unless the parties so agree. Absent such an agreement, either party may reject the arbitration award and proceed with litigation. (§ 6204, subd. (a).) However, "[t]he parties may agree in writing to be bound by the award of arbitrators appointed pursuant to this article at any time after the dispute over fees, costs, or both, has arisen." (*Ibid.*)

Here, the parties agreed that the arbitration was to be binding. (See Binding Arbitration Award ["matter was submitted to <u>binding</u> arbitration pursuant to the election made by both parties"].) The firm argues that since in the course of determining the amount of fees to which the attorneys were entitled, the arbitrators considered and rejected Liska's claims of inadequate

fees incurred in preparation for or in the course of the fee arbitration proceeding, notwithstanding any contract between the parties providing for such an award or costs or attorney's fees. However, the filing fee paid may be allocated between the parties by the arbitrators. This section shall not preclude an award of costs or attorney's fees to either party by a court pursuant to subdivision (c) of this section or of subdivision (d) of Section 6204. The State Bar, or the local bar association delegated by the State Bar to conduct the arbitration, shall deliver to each of the parties with the award, an original declaration of service of the award. [¶] Evidence relating to claims of malpractice and professional misconduct, shall be admissible only to the extent that those claims bear upon the fees, costs, or both, to which the attorney is entitled. The arbitrators shall not award affirmative relief, in the form of damages or offset or otherwise, for injuries underlying any such claim. Nothing in this section shall be construed to prevent the arbitrators from awarding the client a refund of unearned fees, costs, or both previously paid to the attorney."

performance, Liska's suit is barred by res judicata and collateral estoppel.[3] "Collateral estoppel is one of two aspects of the doctrine of res judicata. In its narrowest form, res judicata ' "precludes parties or their privies from relitigating a *cause of action* [finally resolved in a prior proceeding]." ' [Citations.] But res judicata also includes a broader principle, commonly termed collateral estoppel, under which an *issue* ' "necessarily decided in [prior] litigation [may be] conclusively determined *as [against] the parties [thereto] or their privies* . . . in a subsequent lawsuit on a *different* cause of action." ' [Citation.] [¶] Thus, res judicata does not merely bar relitigation of identical claims or causes of action. Instead, in its collateral estoppel aspect, the doctrine may also preclude a party to prior litigation from redisputing *issues* therein decided against him, even when those issues bear on different claims raised in a later case." (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 828 [88 Cal.Rptr.2d 366, 982 P.2d 229].)

"Whether collateral estoppel is fair and consistent with public policy in a particular case depends in part upon the character of the forum that first decided the issue later sought to be foreclosed. In this regard, courts consider the judicial nature of the prior forum, i.e., its legal formality, the scope of its jurisdiction, and its procedural safeguards, particularly including the opportunity for judicial review of adverse rulings." (*Vandenberg v. Superior Court, supra,* 21 Cal.4th at p. 829.) In concluding that a private arbitration award may not have nonmutual collateral estoppel effect in the absence of an agreement to that effect, the Supreme Court in *Vandenberg* observed that "private arbitration is a process in which parties voluntarily trade the safeguards and formalities of court litigation for an expeditious, sometimes roughshod means of resolving their dispute. The traditional rule is that ' "[a]rbitrators, unless specifically required to act in conformity with rules of law, may base their decision upon broad principles of justice and equity, and in doing so may expressly or impliedly reject a claim *that a party might successfully have asserted in a judicial action.*" ' " (*Id.* at pp. 831–832.)

It is unnecessary to dwell upon whether the factors enumerated in *Vandenberg* would, in the absence of a legislative mandate, permit the application of collateral estoppel here, although several of those factors clearly militate against the application of the collateral estoppel doctrine. The fee arbitration scheme established by the MFA contemplates a quick, inexpensive process by which a client, such as Liska, may dispute the fee he or she has been charged without the need for hiring a second attorney. In fact, whatever accusations Liska may have made against the attorneys here, he was not represented by counsel in the arbitration proceedings. Given the nature and objective of the arbitration, the MFA has explicitly precluded the client from asserting claims

---

[3] For purposes of this opinion we assume a complete overlap of the charging allegations in Liska's complaint and the allegations that were rejected in the arbitration.

for affirmative relief in the arbitration proceedings. (§§ 6200, subd. (b)(2), 6201, subd. (d), 6203, subd. (a).) And, as noted above, section 6204, subdivision (e) provides, equally explicitly: "Except as provided in this section, the award and determinations of the arbitrators shall not be admissible nor operate as collateral estoppel or res judicata in any action or proceeding."

The firm rests its attempt to avoid the impact of subdivision (e) on the opening clause of the subdivision: "Except as provided in this section . . . ." The exception referred to is subdivision (a) of section 6204, which authorizes the parties to "agree in writing to be bound by the award of arbitrators."[4] Section 6203, subdivision (a) in turn begins by stating that the award shall be in writing and signed by the concurring arbitrators, and continues that the award "shall include a determination of all the questions submitted to the arbitrators, the decision of which is necessary in order to determine the controversy." Defendants argue that if the parties agree to engage in binding arbitration, under section 6204, subdivision (a) the parties agree to be bound by all determinations the arbitrators make in reaching their award—i.e., that the award and determinations will have collateral estoppel effect. This interpretation is inconsistent with the language, the purpose and the legislative history of the MFA.

Section 6204, subdivision (a) provides only that the parties may agree to be bound "by the *award* of the arbitrators" (italics added), not by their findings. In contrast, subdivision (e), provides that "the award *and determinations* of the arbitrators" are not admissible for the purposes of res judicata and collateral estoppel. Moreover, the remaining portion of subdivision (a) provides that a party who "willfully fails to appear at the arbitration hearing" is not entitled to seek a trial de novo even if that party did not agree to be bound by the arbitration award. In determining whether a failure to appear was willful, "the court may consider any *findings* made by the arbitrators on the subject of a party's failure to appear." (*Ibid.*, italics added.) Thus, where the Legislature intended to permit the court to consider the findings of the arbitrators, it said so explicitly, but it otherwise limited the binding effect to

---

[4] Section 6204, subdivision (a) provides in full: "The parties may agree in writing to be bound by the award of arbitrators appointed pursuant to this article at any time after the dispute over fees, costs, or both, has arisen. In the absence of such an agreement, either party shall be entitled to a trial after arbitration if sought within 30 days, pursuant to subdivisions (b) and (c), except that if either party willfully fails to appear at the arbitration hearing in the manner provided by the rules adopted by the board of governors, that party shall not be entitled to a trial after arbitration. The determination of willfulness shall be made by the court. The party who failed to appear at the arbitration shall have the burden of proving that the failure to appear was not willful. In making its determination, the court may consider any findings made by the arbitrators on the subject of a party's failure to appear."

which the parties might agree to the award itself—i.e., to the amount of attorney fees (and/or costs) to which the attorney is entitled (or must refund).

The statutory language reflects full appreciation of the difference between the award of fees and costs that the arbitrators make and issues that they determine in order to decide what the award should be. The paragraph added to section 6203, subdivision (a) in 1984 provides very plainly that "[e]vidence relating to claims of malpractice and professional misconduct, shall be admissible only to the extent that those claims bear upon the fees, costs, or both, to which the attorney is entitled. The arbitrators shall not award affirmative relief, in the form of damages or offset or otherwise, for injuries underlying any such claim." This language was intended to "clarif[y] that claims for affirmative relief which are based on alleged attorney malpractice or professional misconduct are outside the scope of the arbitration procedures. However, arbitrators would be permitted to receive evidence relating to such claims if they bear upon the value of attorney services rendered." (Assem. Com. on Judiciary, Rep. on Assem. Bill No. 3475 (1983–1984 Reg. Sess.) as amended Apr. 23, 1984, p. 1)[5] The restriction against awarding any such affirmative relief in the arbitration proceedings would be largely nullified if the arbitrators' findings were binding in a separate action. In this case it is the attorneys that wish to rely on the arbitrators' favorable findings, but if the arbitrators reduced the reasonable value of the attorneys' services upon a finding that the attorneys had performed below the standard of care, and collateral estoppel applied, the attorneys would be bound by the finding of negligence in a subsequent malpractice action. Clearly such a result was never intended.

This limitation on the effect of the arbitrators' award is required by the purpose underlying the mandatory arbitration of fee disputes. The procedure

---

[5] This amendment was adopted not long after the publication of an article on the MFA that noted the likely overlap between the issue of reasonable fees and possible malpractice, which may have prompted the legislative clarification: "In a substantial number of fee dispute arbitrations, the allegation by the client that the attorney's fees are excessive is predicated in whole, or in part, upon an allegation that the attorney performed inadequately (malpractice). Whether or not evidence concerning the latter may legitimately be considered by arbitrators solely for the purpose of assessing the propriety of the attorney's fee is unresolved by the statute. The problem arises where the client may not be seeking affirmative relief by way of damages for alleged malpractice, but may predicate the proof of excessive attorney's fees upon the alleged incompetence of the attorney. For example, failure of an attorney to file a complaint within the statute of limitations may constitute malpractice and may also conceivably constitute a violation of the Rules of Professional Conduct. [Citation.] Such failure to file a complaint in a timely manner of necessity has an impact on the appropriate fee to be charged to the client. If an attorney charged a retainer of $1000 in order to represent a plaintiff in a lawsuit but the complaint was thereafter barred by the statute of limitations, it can hardly be argued that the attorney has earned his $1000 fee." (Hargarten, *supra*, 16 U.S.F. L.Rev. at pp. 420–421.)

was designed to provide a speedy and inexpensive method for determining solely the amount of fees that an attorney is entitled to charge the client. By providing this economical avenue for resolving fee disputes, it was anticipated that fewer clients would resort to litigation to resolve their grievances with their attorneys. In order to maintain the informality and economy of the arbitration proceedings, both the client and the attorney must be assured that the consequences of the arbitration will extend no further. The absence of counsel, formal discovery, and many of the other procedural safeguards to which a party is entitled before being subjected to personal liability are not consistent with permitting the result of the fee arbitration to establish either liability or nonliability for claims the client may make against the attorney. While this limitation is plain enough from the language of the statute itself, the legislative analysis of the original bill emphasized the same point: "Except for the purpose of determining whether to award attorney's fees, the award and determination of the arbitrators are not admissible in a subsequent judicial proceeding." (Legis. Analyst, analysis of Sen. Bill No. 1351 (1977–1978 Reg. Sess.) as amended June 14, 1978, p. 3.) The potential for the relitigation of factual issues determined in the arbitration is the necessary price of such a scheme.

■ Nonetheless, a binding arbitration award is not meaningless. Having agreed that the award will be binding, neither party may seek to undo the award by instituting legal proceedings challenging the amount of fees to which the attorneys are entitled. If the alleged misconduct of the attorneys based on which the client challenged the amount of fees that were due should support a claim for some other form of relief or measure of damages, the award does not preclude an action seeking such recovery nor establish the facts for purposes of such an action. On the other hand, no such action can be maintained if the only alleged damages are the very fees that the arbitrators have established the attorneys are entitled to receive. The difficulty in the present case is that Liska's complaint appears to be seeking relief that is in part permissible and in part impermissible in light of the binding arbitration award.

The damage allegations in each of the four causes of action of Liska's complaint are essentialy identical: as the direct result of the particular misconduct, Liska alleged he "has been proximately damaged and has incurred general and special damages of: (a) $1,000,000 because the Arns Law Firm, Arns, and Smith did not provide Plaintiff the legal representation as agreed and (b) $78,694.72 withheld from Plaintiff's net recovery by the

Arns Law Firm." The prayer also requested judgment for the same two elements of damages, in addition to punitive damages. The second element, the $78,694.72 allegedly withheld from Liska's net recovery, presumably was the amount of disputed attorney fees that the arbitrators decided the firm was entitled to recover. Liska's present allegation that at the time of the settlement the firm agreed to reduce its fees and represented it would do so goes directly to the amount of fees to which the firm was entitled. Even if Liska did not make this precise contention in the course of the arbitration, the terms of the operative fee agreement clearly were within the scope of the arbitration. The arbitrators having decided the amount of fees the firm was entitled to recover, and the parties having agreed the award would be binding, Liska may not pursue either a breach of contract or fraud cause of action to recover the disputed fees based on the claim that the firm agreed to accept a lesser amount. However, to the extent that Liska is alleging that as the result of the firm's failure to perform services it agreed to perform or as the result of some other misconduct by the firm, he incurred damages other than payment of attorney fees and costs—such as a reduced recovery from the defendant in the underlying action—that claim could not have been decided in the arbitration. Liska is entitled to pursue that claim in the present action, and he is not bound by the factual findings the arbitrators made in the course of explaining their award.

Thus, the principal error made by the trial court was to sustain defendants' demurrer without leave to amend. On remand, Liska should be given the opportunity to amend his complaint to seek only damages that he claims to have suffered as the result of breach of contract or other misconduct, other than payment of the disputed fees which the arbitrators have awarded the firm. To the extent that any allegations seek to recover or relitigate those fees, a motion to strike may be the appropriate remedy. But if Liska can allege a proper cause of action to recover other damages, he is entitled to proceed with his action.

*Statute of limitations*

■ The firm next asserts that Liska's complaint is barred by the statute of limitations. The MFA provides a circumscribed time within which a trial de novo of the fee dispute may be sought. In a case such as this, in which no action had been filed when the demand for arbitration was made, section 6204, subdivision (c) provides 30 days from the mailing of notice of the arbitrators' award to commence the action.[6] Liska's complaint was filed

---

[6] Strangely, the firm relied on the 100-day limitation set by Code of Civil Procedure section 1288.2 to file an action to vacate an arbitration award. Since the MFA provides its own specific limitation, the limitation of section 1288.2 is inapplicable. (*Loken v. Century 21-Award Properties* (1995) 36 Cal.App.4th 263, 272 [42 Cal.Rptr.2d 683] [applying two-year statute of

more than 30 days after such notice was given, but we disagree that this limitation period has any application to the present case. Liska's complaint does not seek to vacate the fee award, but at least in part seeks the kind of affirmative relief against the firm that is specifically precluded from being requested in the arbitration. It may be that a recovery of damages in a separate action would reduce the net amount that the firm will receive but, as indicated above, the amount of fees owed by Liska to the firm has been conclusively established by the arbitration award and may not be challenged by the present complaint. Any other damages suffered by Liska as the result of breach of contract, fraud or malpractice by the attorneys is, as the MFA clearly recognizes, a separate claim, to which the statute of limitations for the respective claim applies. (Code Civ. Proc., §§ 337, subd. (1), 338, subd. (d), 340.6.) Therefore, Liska's complaint is not barred by the statute of limitations contained in the MFA.

### Order confirming arbitration award

No challenge has been made to the trial court's order confirming the arbitration award. Therefore, although we shall reverse the judgment insofar as it denied recovery on Liska's complaint, there is no reason to disturb the confirmation of the award.

### Motion for attorney fees

Finally, the firm filed a motion with this court seeking attorney fees under section 6203, subdivision (c). That section provides that neither party to an arbitration under the MFA may recover costs or attorney fees incurred in the arbitration, except that "a court confirming, correcting or vacating an award under this section may award to the prevailing party reasonable fees and costs incurred in obtaining confirmation, correction, or vacation of the award including, if applicable, fees and costs on appeal." Since plaintiff's complaint is not the equivalent of a motion to correct or vacate the arbitration award, this section provides no authority for an award of attorney fees here. Accordingly, the motion for attorney fees is denied.

---

limitations applicable to disclosures made by real estate brokers rather than three-year statute of limitations applicable generally to causes of action for fraud], citing *In re James M.* (1973) 9 Cal.3d 517, 522 [108 Cal.Rptr. 89, 510 P.2d 33] [" 'It is . . . an established rule of statutory construction that particular provisions will prevail over general provisions' "].)

## Disposition

The judgment is reversed and the matter is remanded to the trial court for proceedings consistent with this opinion. Liska shall recover his costs on appeal.

McGuiness, P. J., and Corrigan, J., concurred.