Filed 5/26/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| J. NILEY DORIT,<br><br>     Plaintiff and Respondent,<br>v.<br>JACK NOE,<br><br>     Defendant and Appellant. | A157433<br><br>(San Francisco County<br>Super. Ct. No. CGC-19-572638) |

Jack Noe appeals from the denial of his special motion to strike under Code of Civil Procedure section 425.16, which was aimed at the malicious prosecution claim brought by his former attorney, J. Niley Dorit. Dorit's claim is based on Noe's initiation of arbitration of a fee dispute under the mandatory fee arbitration act (MFAA) (Bus. & Prof. Code, § 6200 et seq.).[1] Noe contends that a malicious prosecution claim cannot be based on an MFAA arbitration and that Dorit failed to establish the other elements of the tort. We agree that a malicious prosecution cause of action cannot rest on an MFAA arbitration and shall reverse the trial court's order.

---

[1] All further statutory references are to the Business and Professions Code unless otherwise specified.

## BACKGROUND

In January 2018, Noe hired Dorit to evaluate the medical records of Noe's deceased mother for a potential medical malpractice suit against her doctors. The parties signed a fee agreement in which Noe agreed to pay Dorit a $10,000 non-refundable retainer fee. This sum was intended to cover Dorit's time spent evaluating the claim, as well as "the costs of additional medical records and/or expert medical review if indicated." The agreement contained an arbitration clause, which stated, "Should there arise any disagreement as to the amount of attorneys fees and/or costs, Client agrees to enter into binding arbitration of such issue or dispute before the Bar Association of San Francisco [(BASF)]."

On March 19, 2018, Dorit called Noe on the phone to present his analysis of the records. Noe cut Dorit off soon after Dorit began his presentation. Noe asked Dorit simply to provide his ultimate conclusion about the potential malpractice claim. Dorit said he did not think a malpractice claim was viable.

Noe later said he was dissatisfied with Dorit's evaluation because Dorit did not consult a medical expert and because Noe did not believe Dorit seriously evaluated the case. Shortly after the call, Noe asked Dorit to return some or all of the retainer fee. Dorit refused, so Noe filed a request for MFAA arbitration with the BASF in July 2018.

Following a hearing, the arbitrator awarded Noe nothing and allocated him the entire filing fee. Pursuant to the MFAA and the BASF's arbitration rules, the award was initially non-binding and either party could have requested a trial de novo in superior court. Because neither party requested

2

a trial de novo, the award became binding by operation of law. (§ 6203, subd. (b).) [2]

A few months later, Dorit sued Noe in San Francisco Superior Court, alleging a single claim of malicious prosecution. Noe responded by filing a special motion to strike under Code of Civil Procedure section 425.16, commonly known as the anti-SLAPP statute. (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 880 (*Wilson*).) The trial court denied the motion. Noe timely filed a notice of appeal.

## DISCUSSION

## I. Legal background and standard of review

### A. Anti-SLAPP law

The anti-SLAPP statute is designed to prevent meritless lawsuits from chilling individuals' exercise of their rights of petition or free speech. (*Wilson*, *supra*, 7 Cal.5th at pp. 883–884.) "To that end, the statute authorizes a special motion to strike a claim 'arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue.' ([Code Civ. Proc.,] § 425.16, subd. (b)(1).)" (*Id.* at p. 884.) "Anti-SLAPP motions are evaluated through a two-step process. Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged. [Citations.] If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least 'minimal merit.' " (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061

---

[2] After the events of this case, the Legislature amended sections 6200 and 6203 of the MFAA in minor respects, effective January 1, 2019. (Stats. 2018, ch. 659, §§ 138–139, pp. 80–83.) The changes are immaterial to this case, so for simplicity we cite to the current versions of these statutes.

(*Park*).) "If the plaintiff fails to meet that burden, the court will strike the claim. Subject to certain exceptions not relevant here, a defendant that prevails on a special motion to strike is entitled to attorney fees and costs. ([Code Civ. Proc.,] § 425.16, subd. (c).)" (*Wilson, supra*, 7 Cal.5th at p. 884.)

We review the trial court's ruling on an anti-SLAPP motion de novo. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325.)

## B. Mandatory Fee Arbitration Act

The MFAA was enacted to eliminate a disparity in bargaining power between attorneys and clients attempting to resolve disputes about attorney's fees. (*Schatz v. Allen Matkins Leck Gamble & Mallory LLP* (2009) 45 Cal.4th 557, 564–565 (*Schatz*).) The Legislature recognized that many clients were infrequent consumers of legal services and would need to hire separate lawyers to litigate fee agreement disputes. (*Id.* at p. 564.) Proponents of the legislation at the time observed that the cost of a second lawyer was prohibitive because it would often equal or exceed the value of the fees in dispute. (*Liska v. The Arns Law Firm* (2004) 117 Cal.App.4th 275, 282 (*Liska*).) This in turn drove many clients to add malpractice claims to their fee disputes, which increased lawyers' malpractice insurance rates. (*Ibid.*)

In response to these concerns from both clients and lawyers, the Legislature instructed the State Bar to establish and administer an effective, inexpensive system of arbitration for fee disputes before local bar associations. (*Schatz, supra*, 45 Cal.4th at pp. 564–565; *Liska, supra*, 117 Cal.App.4th at pp. 281–282.) In addition to avoiding the need for counsel by making proceedings simple and informal, the MFAA also "strictly limits the scope of the arbitration that the client may demand to the amount of the reasonable fees (or costs) to which the attorney is entitled." (*Liska, supra*, 117 Cal.App.4th at p. 282.) Only fee disputes are subject to MFAA

4

arbitration; arbitrators cannot award affirmative relief or damages against attorneys for negligence or professional misconduct except for a refund of unearned fees or costs. (*Ibid.*; §§ 6200, subds. (a) & (b)(2), 6203, subd. (a).) Arbitrators also cannot award either party attorney's fees or costs related to the arbitration, regardless of any provisions in the parties' contract, although they can allocate the filing fee between the parties. (§ 6203, subd. (a).)

" 'The nature of the obligation to arbitrate under the MFAA differs from that under standard arbitration in two important ways. First, the obligation to arbitrate under the MFAA is based on a statutory directive and not the parties' agreement. Thus, a client may invoke the MFAA and proceed to arbitration despite the absence of any prior agreement to do so. . . . [¶] Second, section 6200, subdivision (c) provides: "[A]rbitration under this article shall be voluntary for a client and shall be mandatory for an attorney if commenced by a client." In other words, whereas a client cannot be forced under the MFAA to arbitrate a dispute concerning legal fees, at the client's election an unwilling attorney can be forced to do so.' " (*Schatz*, *supra*, 45 Cal.4th at p. 565.)

An award in MFAA arbitration is presumed to be non-binding, and either party can request a trial de novo in superior court unless the party willfully failed to appear at the arbitration. (§ 6204, subd. (a).) However, the parties may agree after a dispute has arisen that the arbitrator's award will be binding. (*Ibid.*) Additionally, if neither party requests a trial de novo within 30 days of the award, the arbitrator's award becomes final and binding. (§ 6203, subd. (b).) In any event, section 6204, subdivision (e) states, "Except as provided in this section, the award and determinations of the arbitrators shall not be admissible nor operate as collateral estoppel or res judicata in any action or proceeding."

5

## II. Analysis

The trial court below ruled that Dorit's claim arose from Noe's protected petitioning activity but that Dorit had demonstrated his claim had more than minimal merit. Noe contends the trial court erred in the second portion of its analysis because his MFAA arbitration claim cannot support a malicious prosecution claim and Dorit failed to establish the other elements of the tort. Dorit disagrees and argues in addition that if an MFAA proceeding cannot support a malicious prosecution claim, then it also cannot qualify as protected activity for the purposes of the first step of the anti-SLAPP analysis. Accordingly, we will examine both steps of the anti-SLAPP analysis.

### A. Step One: Claims arising from protected activity

A suit is subject to an anti-SLAPP motion if it arises from "any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (Code Civ. Proc., § 425.16, subd. (b)(1).) Such acts include "any written or oral statement or writing made before a legislative, executive, or judicial body, or any other official proceeding authorized by law" and "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." (*Id.*, subd. (e)(1) & (e)(2).) When interpreting this language to effectuate the Legislature's intent, we keep in mind that the Legislature has instructed the courts to construe the anti-SLAPP statute "broadly." (*Id.*, subd. (a); *Kibler v. Northern Inyo County Local Hospital Dist.* (2006) 39 Cal.4th 192, 199 (*Kibler*).)

6

Noe contends the MFAA arbitration he initiated qualifies as an "official proceeding authorized by law" because it was conducted pursuant to statute as part of a regulatory scheme. We agree that MFAA proceedings qualify as official proceedings because of their statutory basis and connection to State Bar regulation of attorneys.

"When nongovernmental entities are involved, courts have limited 'official proceeding' anti-SLAPP protection to (1) quasi-judicial proceedings that are part of a 'comprehensive' statutory licensing scheme and 'subject to judicial review by administrative mandate' (*Kibler*[, *supra*,] 39 Cal.4th [at p.] 200 [hospital peer review]), and (2) proceedings 'established by statute to address a particular type of dispute.' (*Philipson* [*& Simon v. Gulsvig* (2007)] 154 Cal.App.4th [347,] 358 [mandatory attorney fee arbitration]; see Bus. & Prof. Code, § 6200 et seq.)" (*Century 21 Chamberlain & Associates v. Haberman* (2009) 173 Cal.App.4th 1, 9.) While private contractual arbitration is governed by statute, it is not an official proceeding because it is not required by statute. (*Ibid.*)

Although MFAA arbitrations take place before local bar associations, which are private organizations, MFAA arbitrations qualify as official proceedings because they are both established by statute and part of the State Bar's comprehensive licensing scheme for attorneys. First, *Philipson*, which Dorit fails to address, is on point here. There, a law firm sued its client after, among other things, the client requested arbitration of a fee dispute under the MFAA before the Orange County Bar Association. (*Philipson, supra*, 154 Cal.App.4th at p. 353.) The court stated it had "little trouble concluding that the initiation of a State Bar sponsored fee arbitration proceeding" qualified as protected activity because the arbitration was "an official proceeding established by statute to address a particular type of

7

dispute." (*Id.* at p. 358.)  Although Noe's arbitration was before the BASF, it was similarly governed by the MFAA so the same analysis applies.

*Mallard v. Progressive Choice Ins. Co.* (2010) 188 Cal.App.4th 531 also supports this conclusion.  That case held that where a statute required two parties to agree to arbitration in their contract, the arbitration was an official proceeding for anti-SLAPP purposes.  (*Id.* at pp. 541–542.)  Although the MFAA did not require Noe and Dorit to provide for MFAA arbitration in their fee agreement, it did obligate Dorit to comply with MFAA arbitration even in the absence of that agreement.  (§ 6200, subd. (c).)  Because the obligation to arbitrate here was at least partly statutory, as in *Mallard v. Progressive Choice Ins. Co.*, we agree with *Philipson* that Noe's MFAA arbitration was an official proceeding for anti-SLAPP purposes.

Second, *Kibler* held that proceedings that were part of a comprehensive licensing scheme can be official proceedings for purposes of the anti-SLAPP statute, and the circumstances here are analogous.  *Kibler* involved a lawsuit based on a hospital peer review proceeding, which is the process by which licensed physicians on staff at a hospital evaluate each other's performance and consider outside physicians' applications for admission to staff privileges.  (*Kibler*, *supra*, 39 Cal.4th at p. 199.)  The Supreme Court held that such proceedings were official proceedings because several statutes required hospitals to offer peer review, report the results of peer review proceedings to the board that licenses physicians, and consult that board's records when deciding whether to grant or renew a physician's staff privileges.  (*Id.* at pp. 199–200.)  The court emphasized that these procedures were designed to help protect the public against incompetent, impaired, or negligent physicians.  (*Id.* at p. 200.)  *Kibler* also noted that peer review proceedings were

reviewable via administrative mandate, like the decisions of quasi-judicial administrative agencies. (*Ibid.*)

Although hospital peer review and MFAA proceedings play different roles in their respective licensure schemes, *Kibler*'s reasoning is applicable here. The Legislature charged the State Bar with administering the MFAA system and reviewing local bar associations' rules for fee arbitrations. (*Schatz, supra*, 45 Cal.4th at p. 565; § 6200, subds. (a) & (d); see also §§ 6203, subd. (a) & 6204.5, subd. (b) [imposing procedural requirements on the State Bar "or the local bar association *delegated by the State Bar* to conduct the arbitration," italics added].) Pursuant to this authority, the State Bar has issued guidelines and standards for local bar associations' MFAA arbitration programs. (State Bar Guidelines and Minimum Standards for the Operation of Mandatory Fee Arbitration Programs (Bar Guidelines).) Those guidelines and the State Bar's rules establish that if the State Bar has approved the rules of procedure of a local bar association, that bar association's fee arbitration will constitute the fee arbitration required by the MFAA. (See Rules of State Bar, rule 3.505(A); Bar Guidelines, ¶1.) The State Bar also serves as a backstop arbitration provider, since it allows any party to remove an arbitration proceeding from a local bar association to the State Bar itself, if necessary, for a fair hearing. (See Rules of State Bar, rule 3.506; Bar Guidelines, ¶22.) Finally, similar to how hospitals' peer review proceedings are reviewable by administrative mandate, MFAA arbitration rulings are reviewable via a trial de novo in superior court. (§ 6204, subd. (a).)

The State Bar's involvement in the MFAA program is more than a matter of administrative convenience. The Legislature has instructed the State Bar to enforce any binding MFAA award requiring the refund of fees to a client by making the attorney ineligible to practice law until the attorney

9

pays the award. (§ 6203, subd. (d)(1) [State Bar "shall enforce the award, judgment, or agreement by placing the attorney on involuntary inactive status until the refund has been paid"].) The Bar can also require the attorney to pay administrative penalties or costs to the Bar, and those penalties or costs can be added to the attorney's license fee for the next year. (§ 6203, subd. (d)(3).) The State Bar has established rules implementing these statutory provisions. (Rules of State Bar, rules 3.560–3.566.) The State Bar's role in administering the MFAA system, together with the connections between MFAA arbitration awards and attorney licensure, confirm that MFAA arbitrations are properly viewed as part of the State Bar's regulation of licensed attorneys under *Kibler* and therefore qualify as official proceedings for the purposes of the first stage of anti-SLAPP analysis.

Because MFAA arbitration qualifies as an official proceeding under the anti-SLAPP statute under both these lines of authority, we conclude Noe has carried his burden of proving Dorit's malicious prosecution cause of action based on Noe's MFAA arbitration claim arose from activity protected by the anti-SLAPP statute.

## B. Step Two: Probability of prevailing

Once a defendant bringing an anti-SLAPP motion establishes that a claim arises from protected activity, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the claim, meaning the claim has "at least 'minimal merit.'" (*Park, supra*, 2 Cal.5th at p. 1061.) This second step is "a 'summary-judgment-like procedure.'" (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.) "The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and

10

evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law." (*Id.* at pp. 384–385.)

Noe contends the trial court erred in finding that Dorit established a probability of prevailing because MFAA arbitrations cannot serve as a prior action for a malicious prosecution claim and Dorit failed to submit sufficient evidence to prove Noe lacked probable cause or acted with malice. We agree with Noe that a malicious prosecution claim cannot be based on an MFAA claim, so we need not examine whether Dorit submitted sufficient evidence to support the other elements of the tort.

"To establish a cause of action for malicious prosecution, a plaintiff must demonstrate that the prior action (1) was initiated by or at the direction of the defendant and legally terminated in the plaintiff's favor, (2) was brought without probable cause, and (3) was initiated with malice." (*Siebel v. Mittlesteadt* (2007) 41 Cal.4th 735, 740.) "The malicious commencement of a civil proceeding is actionable because it harms the individual against whom the claim is made, and also because it threatens the efficient administration of justice. The individual is harmed because he is compelled to defend against a fabricated claim which not only subjects him to the panoply of psychological pressures most civil defendants suffer, but also to the additional stress of attempting to resist a suit commenced out of spite or ill will, often magnified by slanderous allegations in the pleadings. In recognition of the wrong done the victim of such a tort, settled law permits him to recover the cost of defending the prior action including reasonable attorney's fees [citations], compensation for injury to his reputation or impairment of his social and business standing in the community [citations], and for mental or emotional distress [citation]. [¶] The judicial process is adversely affected by a maliciously prosecuted cause not only by the clogging

11

of already crowded dockets, but by the unscrupulous use of the courts by individuals '. . . as instruments with which to maliciously injure their fellow men.' " (*Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 50–51, fn. omitted (*Bertero*).)

However, because of the potential for the tort to unduly chill citizens' willingness to bring disputes to court, malicious prosecution "has traditionally been regarded as a disfavored cause of action" and "the elements of the tort have historically been carefully circumscribed so that litigants with potentially valid claims will not be deterred from bringing their claims to court by the prospect of a subsequent malicious prosecution claim." (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 872.)

"Courts have decided that various proceedings may or may not give rise to a future malicious prosecution action, largely depending on their nature." (*Brennan v. Tremco Inc.* (2001) 25 Cal.4th 310, 313 (*Brennan*).) As the trial court recognized, no case has addressed whether MFAA arbitration can support a malicious prosecution claim. Courts have held, however, that a malicious prosecution claim cannot be based on private arbitration but can be based on judicial arbitration. (*Brennan*, at p. 314; *Stanley v. Superior Court* (1982) 130 Cal.App.3d 460 (*Stanley*).) As a result, the parties have vigorously disputed whether MFAA arbitration is closer to judicial arbitration or private arbitration.

MFAA proceedings do not fit cleanly into either category. For example, *Brennan*'s conclusion that malicious prosecution cannot follow a private arbitration rested in part on the voluntary nature of private arbitration and the finality of private arbitration awards. (*Brennan, supra*, 25 Cal.4th at p. 315.) Considerations such as voluntariness and finality do not easily apply to MFAA arbitration. (See *Schatz, supra*, 45 Cal.4th at pp. 564–565

[distinguishing between MFAA arbitration and private arbitration on these factors].)  By default, MFAA arbitration is voluntary for clients but mandatory for attorneys, while attorneys and clients may voluntarily agree in their fee agreements to require MFAA arbitration.  (§ 6200, subd. (c); see *Benjamin, Weill & Mazer v. Kors* (2011) 195 Cal.App.4th 40, 54–55 [parties can contractually agree to non-binding MFAA arbitration].)  Likewise, MFAA arbitration awards by default are not final, in that either party can request a trial de novo.  (§ 6204, subd. (a).)  But parties can agree to make the award binding after a dispute arises, and an award can become binding if no party requests a trial de novo within the statutory time period, as happened here. (§§ 6203, subd. (b), 6204, subd. (a).)

MFAA arbitration also does not squarely fit the mold of judicial arbitration.  In judicial arbitration, relatively small cases filed in court are subject to mandatory diversion for non-binding arbitration before being allowed to proceed to trial.  (*Mercury Ins. Group v. Superior Court* (1998) 19 Cal.4th 332, 343; see also Code Civ. Proc., § 1141.11 [establishing criteria for cases subject to judicial arbitration].)  This serves as an aid to settlement of litigation by giving the parties an arbitrator's neutral view of all the issues in a case, including damages and costs.  (*Stanley*, *supra*, 130 Cal.App.3d at p. 471; *Sagonowsky v. More* (1998) 64 Cal.App.4th 122, 131.)  If no party requests a trial de novo after the arbitration, the decision of the arbitrator becomes final and binding.  (*Stanley*, at p. 465; see also *Sagonowsky*, at p. 131.)  MFAA arbitration may also be viewed as an aid to settlement of disputes by similarly providing a neutral evaluation of a party's claim.  But where an MFAA arbitration occurs, it necessarily precedes any litigation; this sequence, as we explain below, is a significant difference for purposes of malicious prosecution.  Additionally, while MFAA arbitration, like judicial

13

arbitration, can be binding if not challenged via a request for a trial de novo, there is no statutory requirement mandating MFAA arbitration of all fee disputes and there is no limit to the size of fee disputes that parties can take to MFAA arbitration.

Fortunately, there is no need to shoehorn MFAA arbitration into either of these two categories. As *Brennan* recognized, the ultimate questions are whether the nature of MFAA arbitration suits the purpose of the malicious prosecution tort and whether the tort suits the purpose of MFAA arbitration. (See *Brennan*, *supra*, 25 Cal.4th at p. 313.) After examining those questions directly, we conclude MFAA arbitration cannot serve as the predicate for a malicious prosecution claim.

As noted above, the tort of malicious prosecution serves two purposes: (1) preventing unscrupulous individuals from using the courts for nefarious ends, thereby clogging crowded court dockets; and (2) compensating wronged individuals. (*Bertero*, *supra*, 13 Cal.3d at pp. 50–51.) MFAA arbitrations are not court proceedings, so allowing malicious prosecution based on an MFAA arbitration would not serve the first purpose. A client waives the right to MFAA arbitration by filing a suit, and a lawyer must give the client the right to request MFAA arbitration before filing a claim in court. (§ 6201, subds. (a), (d); *Aguilar v. Lerner* (2004) 32 Cal.4th 974, 987.) Thus, MFAA arbitration necessarily precedes court litigation, and the Legislature created it in the hope that it would serve as a substitute for court litigation. (*Liska*, *supra*, 117 Cal.App.4th at pp. 281–282.) It is true that a party can request a trial de novo in superior court and thereby trigger the concern of malicious prosecution with abuse of the judicial process. But if this were to occur, the defendant in the trial de novo could then file a malicious prosecution claim

14

based on the court proceedings.[3]  Allowing the defendant in MFAA arbitration to file a malicious prosecution claim based only on the arbitration contributes nothing towards the goal of deterring abuse of the court system.

Allowing malicious prosecution claims based on MFAA arbitrations would also do little to advance the second purpose of the tort, compensating wronged individuals.  While the "right to redress for malicious conduct should not depend upon the form of the proceeding by which the injury is inflicted" (*Hardy v. Vial* (1957) 48 Cal.2d 577, 581), MFAA arbitrations do not impose the same injury as most types of civil actions or proceedings.  A malicious prosecution claim allows a plaintiff to recover the costs and attorney's fees incurred in defending the prior, baseless suit, as well as harm to the plaintiff's reputation and mental or emotional distress.  (*Bertero*, *supra*, 13 Cal.3d at pp. 50–51.)  As Noe points out, Dorit represented himself in the arbitration here, and the proceeding was confidential.  (See Bar Association of San Francisco, Rules of Procedure, Arbitration and Mediation of Attorney/Client Fee Disputes, rule 9(H)(1), at p. 12 [arbitrations are closed to the public and the arbitration case file and the award are confidential].)  The arbitrator also allocated the filing fee to Noe.  As a result, Dorit's costs from the arbitration itself were low and the risk of harm to his reputation was

---

[3] *Cooper v. Pirelli Cable Corp.* (1984) 160 Cal. App. 3d 294, 298–299, held that a defendant who requests a trial de novo in superior court after a small claims judgment cannot later sue for malicious prosecution, in part because the de novo action remains founded on the small claims proceeding and malicious prosecution cannot be based on a small claims action. However, the court there noted that the de novo trial after a small claims judgment at the time was itself a limited, summary proceeding.  (*Id.* at p. 299.)  This remains true today.  (See Code Civ. Proc., § 116.770, subd. (b).) By contrast, there are no limitations on the trial de novo after an MFAA arbitration.  *Cooper v. Pirelli Cable Corp.* therefore does not present an obstacle to malicious prosecution claims following trial de novo of MFAA arbitrations.

minimal.  (Cf. *Trope v. Katz* (1995) 11 Cal.4th 274 [self-represented attorneys cannot collect attorney's fees as prevailing parties].)  These facts undercut the need for his malicious prosecution claim.

The arbitration here seems typical in these respects.  MFAA arbitration was created specifically to avoid the need for clients to hire attorneys.  (*Liska, supra,* 117 Cal.App.4th at p. 284.)  Because the proceeding is intended to be informal and expeditious (*id.* at pp. 281, 287), attorneys will likely choose not to hire separate counsel, as Dorit did here.  Most bar associations' MFAA arbitrations are also confidential.[4]  The State Bar Guidelines for local bar associations' MFAA programs require the associations to preserve the confidentiality of attorney-client privileged and work-product protected documents disclosed during an arbitration.  (Bar Guidelines, ¶6; § 6202.)  Bar associations may choose to maintain the confidentiality of the entire proceeding to meet this requirement.

---

[4] See, e.g., San Diego County Bar Association, Local Rules of Operation for Fee Arbitrations, rule 26.4, p. 13, at <https://www.sdcba.org/docDownload/724590 [as of May 22, 2020]> [arbitration hearings, case file, and award are confidential]; Los Angeles County Bar Association Attorney-Client Mediation and Arbitration, Rules for Conduct of Mandatory Arbitration of Fee Disputes Pursuant to Business and Professions Code §§ 6200 et seq., Rule 44, p. 18,  at <https://www.lacba.org/docs/default-source/acmas/other-forms-and-documents/attorney-client-fee-arbitration-services/lacba-rules-mandatory_arbitration.pdf [as of May 26, 2020]>; but see Sacramento County Bar Association, Mandatory Fee Arbitration Rules of Procedure, p. 11, at <https://www.sacbar.org/userfiles/newsletter/2019_SCBA_MFA_Rules_of_Procedure.pdf [as of May 26, 2020]> [arbitration awards are public, though hearings and case file are confidential]; San Mateo County Bar Association, Rules of Procedure for Fee Arbitration, rules 26.1 & 26.3, pp. 10–11, at <https://www.smcba.org/wp-content/uploads/2019/04/Arbitration_Mediation-Rules.pdf [as of May 26, 2020] [same].)

Without attorney's fees or harm to reputation, the only damage from MFAA arbitration is likely to be the defendant's emotional distress. We do not doubt that defending an unjustified demand for MFAA arbitration will often be stressful to the unfortunate defendant of the action. Nonetheless, we expect the limited nature of the claims subject to MFAA arbitration, the limited relief available, and the expeditious nature of the proceedings will mitigate the emotional toll MFAA arbitration imposes on defendants.

Other courts have limited the availability of malicious prosecution after proceedings that would not advance the purposes of the tort. *Black v. Hepner* (1984) 156 Cal.App.3d 656, 659, held that a small claims action could not support a malicious prosecution claim, in part because "the small claims process eliminates, or at least considerably diminishes, the extent of harm to a litigant by its malicious commencement." Similarly, *Siam v. Kizilbash* (2005) 130 Cal.App.4th 1563, 1573, held that a civil harassment restraining order could not support a malicious prosecution claim in part because the harm from maliciously motivated requests for such restraining orders "should be fairly minimal." The court noted that hearings on civil harassment petitions, like small claims actions, are designed to be simple and expeditious, resolved without the need for a lawyer in a few weeks. (*Ibid.*) As a result, "[t]here is no risk of incarceration or financial ruin" for defendants in such hearings, and they are unlikely to incur substantial attorney's fees. (*Ibid.*) The same is true of most MFAA proceedings. Although there is no cap on the amount of fees subject to MFAA arbitration, the amounts in dispute are likely to be small, given that they historically did not warrant hiring an attorney to collect them. (See *Liska, supra,* 117 Cal.App.4th at p. 282 [MFAA enacted because cost of attorney to litigate fee dispute often equaled or exceeded the amount in controversy].) Because

17

the financial exposure of defendants in MFAA arbitrations, whether they be clients or attorneys, should not be severe in most cases, the remedy of a malicious prosecution claim is unnecessary.

By contrast, judicial arbitration can support a malicious prosecution claim precisely because by the time a case is resolved in judicial arbitration, the defendant has already suffered much of the harm that malicious prosecution guards against. As noted by the court in *Stanley*, *supra*, 130 Cal.App.3d at p. 468, judicial arbitration follows the filing of a normal civil action with a public complaint, the hiring of attorneys, and potentially extensive discovery. Attorneys also try the judicial arbitration itself, using formal rules of evidence. (*Ibid.*) When a party has already incurred such costs, it makes sense not to allow the plaintiff to escape liability by accepting an adverse judicial arbitration award to end the action. (*Id.* at pp. 471–472.) By the same rationale, because parties will not incur such costs in MFAA arbitration, the purposes of malicious prosecution are not advanced by permitting such claims to be based on MFAA proceedings.

In addition to being unnecessary to serve the purposes of the tort, malicious prosecution following MFAA arbitration is undesirable because it would conflict with the central purpose of MFAA arbitration. *Pace v. Hillcrest Motor Co.* (1980) 101 Cal.App.3d 476 is instructive in this regard. The court there held that a malicious prosecution claim would not lie following a small claims action because it threatened to undermine the purpose of small claims court. (*Id.* at pp. 478–479.) The court noted that there are no attorneys, pleadings, legal rules of evidence, juries, or formal findings in small claims court because of the theory that "ordinary litigation 'fails to bring practical justice' when the disputed claim is small, because the time and expense required by the ordinary litigation process is so

18

disproportionate to the amount involved that it discourages legal resolution of the dispute." (*Id.* at p. 478.) *Pace* therefore concluded, "To permit an action for malicious prosecution to be grounded on a small claims proceeding would frustrate the intent of the Legislature in adopting an expeditious and informal means of resolving small disputes, would inject into a simple and accessible proceeding elements of time, expenses, and complexity which the small claims process was established to avoid, and would require a prudent claimant to consult with an attorney before making use of this supposedly attorney-free method for settling disputes over small amounts." (*Id.* at p. 479; see also *Black v. Hepner*, *supra*, 156 Cal.App.3d at pp. 659–660 [agreeing with *Pace* that "any deviation from [small claims court's] summary nature because some defendants may be recipients of such abuse [from malicious claims] would countervail the reason for its existence"].)

*Siam v. Kizilbash*, *supra*, 130 Cal.App.4th at p. 1573, reached the same conclusion in the context of civil harassment protective order hearings under Code of Civil Procedure section 527.6. In addition to rejecting malicious prosecution claims based on such hearings because of the minimal harm to the defendant, as discussed above, the court concluded that allowing such claims would frustrate the streamlined hearing procedure. The court noted that it would cause parties to seek legal advice before seeking protective orders, and the risk of malicious prosecution liability might dissuade harassment victims from seeking protection. (See also *Robinzine v. Vicory* (2006) 143 Cal.App.4th 1416, 1423–1424 [following *Siam v. Kizilbash* as to substantially similar workplace violence protective order hearings under Code of Civil Procedure section 527.8].)

As Noe points out, this concern applies to MFAA proceedings as well. Like small claims court, the Legislature created MFAA arbitration in

19

response to concerns that the amounts in controversy in fee disputes and the uneven playing field between clients and counsel were not a good fit with the high costs of normal litigation procedures. (*Liska*, *supra*, 117 Cal.App.4th at p. 282.) Exposing MFAA arbitration parties to malicious prosecution liability would discourage the use of MFAA arbitration altogether, thereby tilting the playing field back in favor of attorneys. Clients would either refrain from pursuing meritorious fee disputes or return to their former practice of appending malpractice claims to fee disputes in court in order to justify the cost of counsel, thereby driving up attorney's malpractice insurance premiums. (See *ibid.*) Attorneys and clients would both suffer. "In order to maintain the informality and economy of the [MFAA] arbitration proceedings, both the client and the attorney must be assured that the consequences of the arbitration will extend no further." (*Liska*, *supra*, 117 Cal.App.4th at p. 287.)

One other aspect of MFAA arbitrations makes them an unsound basis for malicious prosecution claims. To establish a malicious prosecution claim, a plaintiff must prove the underlying proceeding terminated in his or her favor. (*Siebel v. Mittlesteadt*, *supra*, 41 Cal.4th at p. 740.) "It is apparent 'favorable' termination does not occur merely because a party complained against has prevailed in an underlying action. While the fact he has prevailed is an ingredient of a favorable termination, such termination must further reflect on his innocence of the alleged wrongful conduct. If the termination does not relate to the merits—reflecting on neither innocence of nor responsibility for the alleged misconduct—the termination is not favorable in the sense it would support a subsequent action for malicious prosecution." (*Lackner v. LaCroix* (1979) 25 Cal.3d 747, 751, fn. omitted.)

20

Dorit cannot satisfy this element because the Legislature has strictly limited the admissibility and effect of MFAA arbitration awards. Section 6204, subdivision (e) states, "Except as provided in this section, the award and determinations of the arbitrators shall not be admissible nor operate as collateral estoppel or res judicata in any action or proceeding." The legislative history confirms this plain language, as an analysis of the bill that created the MFAA system explained, " 'Except for the purpose of determining whether to award attorney's fees, the award and determination of the arbitrators are not admissible in a subsequent judicial proceeding.' (Legis. Analyst, analysis of Sen. Bill No. 1351 (1977–1978 Reg. Sess.) as amended June 14, 1978, p. 3.)" (*Liska, supra*, 117 Cal.App.4th at p. 287.)

*Liska* held this provision prevented the defendant law firm in an MFAA arbitration from using the arbitration award in its favor for issue preclusion in a subsequent action by the client against the firm and its individual attorneys. (*Liska, supra*, 117 Cal.App.4th at pp. 287–288.) The court stated that "where the Legislature intended to permit the court to consider the findings of the arbitrators, it said so explicitly, but it otherwise limited the binding effect to which the parties might agree to the award itself—i.e., to the amount of attorney fees (and/or costs) to which the attorney is entitled (or must refund)." (*Id.* at pp. 285–286.) Thus, while the award prevented the client from challenging the amount of fees to which the attorneys were entitled, it did not prevent the client from requesting other forms of relief or establishing the facts for such relief, even though those facts might overlap with his earlier fee arbitration claim. (*Id.* at p. 287.)

The same principle prevents Dorit from proving that the arbitration's termination in his favor demonstrated his innocence of any wrongdoing. The mere fact that Dorit prevailed and was not required to refund any of his fees

21

to Noe is not sufficient to prove the MFAA arbitration terminated in his favor for malicious prosecution purposes. The specific basis of the arbitrator's ruling in Dorit's favor is essential to prove Dorit was innocent of Noe's claims of wrongdoing. The only way to determine the basis for the ruling is to examine the arbitrator's findings and conclusions. Because section 6204, subdivision (e) bars precisely that type of examination, Dorit cannot succeed with his malicious prosecution suit.

*Kurz v. Syrus Systems, LLC* (2013) 221 Cal.App.4th 748 supports this conclusion. That court held that an employer could not prove a former employee's unemployment benefits claim and appeal terminated in the employer's favor because Unemployment Insurance Code section 1960 prohibited use of the board's decision as evidence in any later action between the employer and employee. (*Id.* at p. 766.) As a result, the court reversed the trial court's denial of an anti-SLAPP motion and remanded with an order to grant the motion. Section 6204, subdivision (e) embodies a similar prohibition against the use of an MFAA arbitration award, so it, too, cannot be used to support a malicious prosecution claim.

## DISPOSITION

The trial court's order denying Noe's anti-SLAPP motion is reversed. The matter is remanded to the trial court to enter an order granting the motion and to conduct for further proceedings consistent with this opinion.

_____

BROWN, J.

WE CONCUR:


_____

POLLAK, P. J.


_____

TUCHER, J.

*Dorit v. Noe* A157433

Trial Court:   San Francisco City & County Superior Court

Trial Judge:   Hon. Ethan P. Schulman

Counsel:

Morris & Stone LLP, Aaron P. Morris, for Defendant and Appellant.

Dorit Law Firm, J. Niley Dorit for Plaintiff and Respondent.